Morphy, J.
delivered the opinion of the court.
This action is brought to annul the sale of a flatboat fitted up to be used as a ball-room, on the ground that at or before the time of the sale it had defects known to the defendant, which he fraudulently concealed from the plaintiff. The petition charges that before purchasing, the plaintiff informed defendant that he would not buy the flatboat if it leaked; and that defend- [99] ant represented the boat to be sound and in good order; and showing him that the pump would not draw, assured the plaintiff that the boat had not been pumped for six days; that on or about the first of July, 1839, the boat was delivered to the plaintiff at his domicil in Assumption, and there was then no water in it; but that the very next morning it had leaked so much that the water in the hold exceeded ten inches in depth ; that at the time of the purchase the boat was so leaky that it was of little value, and its use as a ball-room was thereby rendered extremely inconvenient and imperfect; that said defect was fraudulently concealed, and the boat falsely represented to be in good order by defendant, with a view to deceive the plaintiff in the purchase; that soon after he discovered such defect and fraud, he (plaintiff) offered to return the boat and cancel the sale, but that defendant refused to receive the boat or return the price. The answer denies all fraud or deceit, and avers that the plaintiff had as perfect a knowledge of the boat 'as defendant himself; having on the day of the sale made a more thorough examination of her than he (defendant) ever did, and expressed his satisfaction as to her soundness; that moreover the defendant never warranted the boat in any manner, but sold it with the express understanding that the buyer was to receive it on his own examination and without any warranty. The case was laid before a jury, who brought in a verdict for the defendant; after a fruitless attempt to obtain a new trial, the plaintiff appealed.
Had all the witnesses examined in this case appeared before the jury, and been residents of the parish where the trial took place, we would not perhaps have disturbed this verdict; we would have considered that those parts of the testimony which had created in our minds a strong conviction of its incorrectness, were disbelieved by the jury from a personal knowledge of the witnesses; but in this case all the evidence adduced by the plaintiff was taken under a commission directed to, and executed in the parish of [100] Ascension. The most important and material part of it seems to have *64 been entirely overlooked by the jury. They appear to have based their verdict wholly on the testimony of the witnesses of their own parish who were brought before them. Giving to these witnesses the fullest credit, they establish that before purchasing plaintiff examined the boat and expressed himself satisfied with its condition, and that even after the sale he appeared to consider his bargain a good one. They do not state that the boat was sold without a warranty, but only infer that there was none in the sale, because they heard nothing said about it. As to the condition of the boat, they agree with the plaintiff’s witnesses that it was leaky; although there is some variance between them as to the extent of the leakage, they further state that the defendant used the boat and gave several balls on board before she sunk. All this may be true, and does not absolutely conflict with the statements made by the plaintiff’s witnesses. Hyppolite Guilfaut, one of them, says, that a few days before the sale Robichaux requested witness to say nothing of the leaky condition of the boat, because he was about selling her to Melanjon ; that witness told him that he ought not to cheat the plaintiff and put the lives of the women and children in danger, to which defendant replied that he did not care, provided he got his money. Martinez, a witness present when the bargain was made, says, that the defendant represented the boat to be in good order; that Melan^on told him that he would not buy the boat if it leaked; Robichaux answered that he had nothing to fear on that score. Another witness states that he visited the boat soon after the delivery to plaintiff; it leaked very badly, and it was worth a dollar and a half a day to pump her out; that four or five days after the sale, Melamjon finding the boat so leaky offered Robichaux to [101] take her back; he even offered the defendant fifty dollars to annul the sale, and Robichaux refused saying he would not do it for three hundred dollars; that far from expressing any satisfaction at his bargain, Melanyon complained to witness that he had been deceived. Trasimond Trachant, a carpenter by trade, says that a few days after the sale he visited the boat; it leaked considerably, he thinks about ten inches every twenty-four hours; it was worth at least a dollar per day to pump her clear of the leakage; that at plaintiff’s request he examined the boat, and found her very rotten. Charles Champagne, one of defendant’s own witnesses, testifies that the day after the arrival of the boat, he and his brother pumped out five or six inches of water; that on the Sunday following witness hired two negroes to pump the boat; there was then nine or ten inches of water in the hold, although she had been pumped the day before by witness and his brother. With such testimony before us, whatever may be in general our respect for the verdicts of juries, we cannot surrender up to them the convictions of our minds. It is clear from the whole evidence that the fiatboat leaked in such a manner as to make its use as a ball-room so inconvenient and imperfect that the plaintiff would not have purchased had he known this defect to exist. We cannot doubt that the defendant knew this defect, but even if he did not, yet he would be bound to i-estore the price. La. Code, 2496, 2508, 2509; 1 La. Report, 310; 1 Martin, N. S. 312. The examination so much spokon of was made alter the defendant’s declarations as to the soundness and good con *65 dition of the boat; and was perhaps less strict in consequence of such declarations. There is no evidence that warranty was excluded. But if there was, the defendant being being aware of the defect was bound to disclose it; as to the balls given in the boat, the plaintiff was entitled to use it agreeably, to its destination; after defendant’s refusal to take it back, if he did so use it, his right to the redhibitory action was not thereby prejudiced ; and this suit was brought several months before the flatboat was lost. La. Code, art. 2511.
It is therefore ordered, that the judgment of the district court he [102] reversed; and proceeding to give such judgment as, in our opinion, ought to have been rendered below; it is ordered and adjudged that the said sale be cancelled and annulled, and defendant to deliver up to plaintiff, the two notes described in the petition as given for the price of said flatboat, or in default thereof, do pay their amount, to wit, $700, with costs in both courts.