First Circuit

No. 242

GULLETT GIN CO. v. VARNADO GIN CO.,
R. D. FORNEA, OWNER

(February 15, 1928.   Opinion and Decree.)
(March 7, 1928.   Rehearing Granted.)
(February 13, 1929.   Opinion and Decree
on Rehearing.)

S. S. Reid, of Amite, attorney for plaintiff, appellant.

Bascom D. Talley, of Bogalusa, attorney for defendants, appellees.

MOUTON, J.   In July, 1926, plaintiff company sold to defendant a Double Box Press with automatic tramper, ram and other accessories for $1,819.00. A payment of $606.00 was made in cash, and for the balance of the purchase price $1,212.00, two promissory notes, each for $606.00 were executed in favor of plaintiff. On a mortgage given to secure the credit portion of the price, plaintiff took out executory proceedings to have the machinery seized and sold for the payment of the notes and the accrued interest.

The defendant company, through Robert D. Fornea, the owner, obtained the issuance of an injunction to arrest the sale. The injunction is grounded on allegations of fraud and misrepresentation by the agent of plaintiff company in making the sale, and because of redhibitory defects in the thing sold. Defendant company, plaintiff in injunction, asks the annulment of the sale, the avoidance of the two notes sued on, and for the recovery of the $626.00 cash payment made by it with interest from July 15, 1926. Judgment was rendered maintaining the injunction, cancelling the notes, but refusing the restoration to plaintiff of the $606.00 cash payment made on the day of sale. The court also in a companion suit against plaintiff in injunction, rendered judgment rejecting the demand of the Gullett Gin Company brought on an open account for $385.71, for gaskets, packings, etc. The main contest between the parties depends on a proper solution of the issues involved in the injunction suit, which, by consent, was tried on the demand on the open account, with the understanding that a separate judgment would be rendered in each case.

Plaintiff in injunction, it is shown, prior to its purchase of the machinery from the Gullett Gin Company, was using a screw-press for the baling of cotton at its gin. With a view of increasing the number of bales of cotton it could put out daily, a Double Box Press with automatic tramper, ram, etc., was bought by plaintiff in injunction from the Gullett Gin Company which was represented in the deal by George W. Hall a traveling salesman.

The machinery was installed not long after the sale and for a short while seems to have given satisfaction. This satisfactory operation was, however, of very short duration. In a few days, the Varnado Gin Company, purchaser, experienced serious trouble with the ram which was essential to the proper functioning of this Double Box Press. Men of sufficient experience and skill tried in vain at the Varnado Gin, where the machinery had been in-

stalled, to get satisfactory results in baling the cotton. The bales came out wedged-shaped, larger at one end than at the other, and the operation of the machine was so inefficient that a continuation of baling the cotton became practically impossible. The Gullett Gin Company was called up at Amite where it has its domicile, and was told of the trouble that the Varnado Company were experiencing in trying to operate the machinery with the ram that had been originally installed on it. The Gullett Gin Company sent a mechanic to remedy the trouble; the original ram was found defective and a new one was set in, with which the new press was again operated, but without better results. The fact is, that the second ram was less satisfactory than the first, and no satisfaction could be obtained from this Double Box Press.

The vice or defect in the thing sold rendered it so absolutely useless, or its use at least so inconvenient and imperfect, that it must be supposed the Varnado Gin Company would not have bought it had it known of the vice. That being the situation, plaintiff in injunction under the provisions of Article 2520 C. C. would be entitled to an avoidance of the sale.

Counsel for the Gullett Gin Company contends that the Varnado Company cannot obtain relief under the provisions of that Article, because the implied warranty which ordinarily exists in all sales, was restricted or modified in the special warranty which formed part of the contract in the instant case. This special warranty on which counsel relies, reads in part as follows:

"Said machinery is warranted to be of good material and to perform well, if properly operated, by competent persons."

It also provides that in case the purchaser be unable to get the machine to operate well, "telegraphic" or "written notice" must be given to the Gullett Gin Company. Counsel's first contention in reference to this special warranty is that the Varnado Company failed to give it either the written or telegraphic notice as therein provided. The proof is that the complaint about the inefficiency of the machine was given by telephonic communication, and shows that the Gullett Gin Company, upon receiving this message, sent a mechanic to remedy the trouble, and, as a matter of fact, thereafter sent a new ram for the operation of the machine. If the Gullett Gin Company desired to stand on the stipulation that a message, either written or by telegram was a prerequisite to any assistance for the remedying of any fault or deficiency in the machine, it could have ignored the message sent it by telephone. In sending a mechanic to remedy the trouble, the written or telegraphic communication provided for in the warranty was ignored and waived. It was too late to raise such an issue after the Gullett Company had attempted to correct whatever caused the failure of the Varnado Company to successfully operate the machine.

Counsel for the Gullett Company contends that it fulfilled its warranty by effectively replacing the parts which Fornea, owner of the Varnado Company, claimed were defective. It is true that the Gullett Company attempted to replace these parts, but it is equally certain that it was not successful in remedying these defects. In that respect it failed to live up to the obligations of its warranty, and the consequence was that the machinery failed to "perform well" as was guaranteed in the special warranty, although it was properly operated as was required in the special warranty stipulations.

The lower court decreed a cancellation of the notes, and refused the reimbursement to plaintiff of the cash payment on the contract which meets with our approval, and the judgment in the injunction suit is therefore affirmed.

The Court also rejected the claim on the open account in the other suit which was for the recovery of the price of gaskets, packings, etc., that had been used to remedy the defects in the ram, and for a follow-block which was also shown to be defective. The price for these items is not recoverable. There is also a claim on the open account for an insurance premium paid by plaintiff. Counsel for the Gullett Company says, as defendant failed to return and actually prohibited the return of the ram and oil tank, the company is entitled to collect therefor, and for the accessories. The evidence fails to support this conclusion of fact contended for by counsel, and the demand for the insurance premium, and for the accessories, was properly rejected by the judgment of the District Court which will also be affirmed, but in a separate judgment.

---

### ON REHEARING.

ELLIOTT, J. A rehearing was granted the Gullett Gin Company herein. None other was prayed for, therefore we consider requests contained in the petition for which the rehearing was granted, but no further. The rehearing was to enable us to reconsider the law and the facts in both cases.

The Gullett Gin Company contends that our opinion and decree gives effect to evidence altering the provisions of the written warranty contained in the agreement for the sale of the press in question, and that it was error to do so.

The act of sale contains an agreement, as follows:

"That you warrant said machinery as expressed on the back hereof but not otherwise."

And a further agreement as follows:

"When this order is accepted by you, it is understood that the same shall be, and be held to be the entire contract between us and no agreement, verbal or otherwise, other than is set forth herein, forms any part of this contract."

The warranty expressed on the back of the Act of Sale reads as follows:

"Said machinery is warranted to be of good material and to perform well if properly operated by competent persons. Upon starting, if the purchaser at any time, within 10 days, is unable to make same operate well, telegraph or written notice, stating wherein it fails to conform to the warranty, is to be given by the purchaser to the Gullett Gin Company at Amite, La., and not verbally to any of its travelling men. And reasonable time shall be given the Gullett Gin Company to remedy the defect, the purchaser rendering all necessary and friendly assistance and in case trouble be caused from a clearly defined original defect in the machinery itself, the Gullett Gin Company reserves the right to replace any defective part or parts without charge; but such defective part or parts shall not condemn the machine to which it belongs. If on trial the machine can not be made to fulfill the warranty and the fault is in the machine itself, the purchaser when instructed to do so, agrees to load and ship the machine where instructed and the amount of the purchase price of same is to be credited on the notes pro rata or money paid thereon refunded pro rata; the purchaser in such case to have nor make any claim for any damages of any nature or character whatsoever against the Gullett Gin Company, by reason of the failure of said machine to fulfil the warranty; but the pro rata diminution of the purchase price aforesaid to

be the sole and only element of damage for breach of this warranty.

"Failure of any article named herein to comply with this aforesaid warranty shall in no way affect this contract nor the notes and chattel mortgage and trust deed given in accordance therewith as to the other articles named therein. Failure to make such trial or to give such notice, or use after ten days without notice shall be conclusive evidence of the fulfilment of the warranty.

"The Gullett Gin Company shall at the request of the purchaser, render assistance of any kind, in operating said machine or any part thereof, or in remedying any defects at any time. Said assistance shall in no case be deemed an acknowledgment on its part of a breach by it of this warranty, or a waiver of or excuse for any failure of the purchaser to fully keep and perform the conditions of this warranty.

"The purchaser agrees to properly put up and operate the machinery according to the directions furnished by the Gullett Gin Company, and that if the fault be traceable to not putting up, or not operating according to directions, purchaser agrees to pay all expenses incurred in rectifying it. Any failure on the part of the purchaser to comply with this contract, releases this warranty entirely."

It is alleged in Fornea's petition for injunction, Articles 2, 5 and 20, that the notes secured by chattel mortgage on the press representing the credit price of the same, and which the defendant in injunction was endeavoring to enforce against the press by executory process, had been obtained from him by the defendant in injunction through fraud and misrepresentation.

He further alleges that the press did not and will not do the work which it was warranted to do; that the Gullett Gin Company in that respect, did not fulfil its warranty.

To give the contention of the Gullett Gin Company practical effect, it would be necessary for us to hold that the war- ranty stipulations printed on the back of the act of sale have taken away and avoided Fornea's right to plead and avail himself of the fraud alleged to have been practiced on him, and of the redhibitory defects in the press alleged in his petition.

The right to show fraud is conferred by the Civil Code, Arts. 1847, et seq. This Article after explaining and illustrating the law on the subject proceeds to say:

"It is not necessary that either of the facts mentioned in the last preceding rule should have actually been produced. It is sufficient to constitute the fraud that such would be the effect of the contract if it were actually performed. C. C., Art. 1847, No. 8."

It is then provided:

"Engagements made through fraud may be avoided by the obligee, either by exception to suits brought on such contracts, or by an action brought for that purpose."

Civil Code, Arts. 1881, 1882 and 2047. Code of Practice, Art. 20. And that the fraud may be proved by simple presumptions or by legal presumptions, as well as by other evidence. C. C., Arts. 1848 and 2288. The theory is, that engagements procured by fraud confer no rights.

Fornea also charges in his petition that the press contained redhibitory vices at the time of sale. A sale of the kind cannot be shielded from redhibition by the stipulations which would negative the law on that subject. Civil Code, Arts. 2520, etc., and 2541, etc. Code of Practice, Art. 20. Macarty vs. Bagniers, 1 Mart. (O. S.) 149; Melancon vs. Robichaux, 17 La. 97; Turner and Renshaw vs. Wheaton et al., 18 La. 37; Ogden vs. Michel, 4 Rob. 155; Copley vs. Berry, 12 Rob. 79; Faulk vs. Hough, 14 La. Ann. 659.

The lower court properly received the parol evidence tendered by Fornea, the

tendency of which was to show that the sale in question had been procured by fraud and that the machine sold· had vices of a redhibitory character at the time of the sale.

The provision that "Failure of any article named herein to comply with this aforesaid warranty shall in no way affect this contract nor the notes and chattel mortgage and trust deed given in accordance therewith, as to the other articles named therein," etc., and the further provision "The Gullett Gin Company reserves the right to replace any defective part or parts without charge, but said defective part or parts shall not condemn the machine to which it belongs," etc., must be construed in connection with the sale made.

The press was sold as one object, thing or unit, made up of different parts. The language quoted therefore means that when any particular part of the thing sold is found to be defective and can be replaced without detriment to the machine as a whole, it may be done. Defendant in injunction concedes that the ram, an essential part of the press, at the time of the sale was defective, but contends that it took out the defective ram and installed another in its place, which it contends is not defective.· That having changed the ram, it has done all that the contract of sale and the law governing rights of the parties, requires it to do.

But after reconsidering the law and the facts, our opinion remains that the Gullett Gin Company has not remedied the defect in the press, and that its defective working has existed and continued from the beginning and has not been removed. The Gullett Gin Company was not aware of the defects in the press at the time of the sale, but that fact does not prevent the redhibition because the evidence shows that because of its defects existing at the time, it will not do the work which it was sold and warranted by the seller to do. Civil Code, Arts. 2529, 2531.

The press was defective at the time of the sale but the defects were not apparent nor discoverable on a simple inspection. It was only after trial in pressing cotton that its defects came to light.

The decision of the Supreme Court of Tennessee in the case of Somerville et al. vs. Gullett Gin Company, 137 Tenn. 509, 194 S. W. 576, cited by defendant in injunction, we take to be a proper application of the law of Tennessee on the contract before the Court, but the present one is subject to the laws of this State, under which redhibitory defects can be shown, even if they do undermine stipulations which would cut off the inquiry.

As for Fornea's claim that the representations of the agent of the Gullett Gin Company, that these hydraulic presses would press cotton faster than the gin he then had and that they were as easy or easier to operate than the screw press which he then had, amounted to a fraud and misrepresentation, we do not think so. It is our belief from the evidence that the representations were true, but the representations must, of course, be understood as applying to presses of the kind that are perfect in their parts and structure; not to one that contains vices in its parts and structure. It happened that this particular press contained vices in its parts and structure at the time of sale, and as a result, gave trouble from the start.

The warranty stipulations invoked by defendant in injunction provides that "The Gullett Gin Company, shall, at the request of the purchaser render assistance of any kind in operating said machine or any part

thereof, or in remedying any defects at any time." The Gullett Gin Company is shown by the evidence not to have timely, effectively nor efficiently discharged this undertaking. In operating the gin, the press must keep up with it. If the gin gets ahead, it must be stopped until the press catches up. Consequently, when a gin is operated in competition with others, which Fornea shows to have been the case, it is just as necessary to have a press that will work fast in pressing the cotton as it is to have a gin that will gin it as it arrives, otherwise the gin cannot be operated.

In this case, when the hydraulic pressure was applied to the ram, the oil which put it in force was forced out of its container with such violence and in such quantity, that the men working the press, as well as the bale of cotton being pressed, were drenched with the oil, gasoline or water, according to the liquid used. There was loss of power, and no performance such as the warranty contemplated, saying nothing of the loss and danger caused by the escaping oil, gasoline, etc. But that, perhaps, was not the greatest trouble. When the ram was forced up against the lint cotton, it would not release so that the bale could be pushed out of the press. It required the efforts of several men for a considerable time to force it down so as to release the bale. Notice of the trouble was communicated to the Gullett Gin Company and an officer of the Company, after a longer delay than should have taken place, accompanied by a mechanic, went to the gin and undertook to work the press, but it could not be worked by them any better than by Fornea. They almost immediately recognized that the press was defective. They decided that it was the ram, but they must also have found something wrong with the casing of the press. The officer informed Fornea that the ram would have to be taken out and another put in, and he immediately returned to Amite and sent back the mechanic with a new ram and a new casing. The mechanic, acting for the Gullett Gin Company, took out the old ram and put in a new one and a new casing, but the trouble continued as before. The new ram with new packing served to check to some extent, the escape of the hydraulic liquid, but the new ram did like the first one when forced up as it would not release its pressure. The strength of four or five men working with heavy wooden beams and iron crow bars for about two hours was necessary in order to get a bale of cotton out of the press, after it had been pressed. Fornea and others who worked with it, attribute the trouble to the mechanical working of the ram. That is no doubt the apparent and likely the main cause, but the evidence indicates that there are other and contributing causes. The failure of the ram to work properly cannot be the sole cause why a bale was often made big at one end and little at the other, in spite of efforts to have it in the usual form.

The claims of the officers of the Gullett Gin Company that its hydraulic press will work, operate and perform as easily and efficiently as they claim, will be conceded, but it is conceded that the press sold Fornea was defective, by taking out the ram which was in it at first and putting in another one. The mechanic who installed the new ram stayed a while after completing the work, and says that he saw several bales of cotton pressed, and that the press worked all right while he was there. But he left in a couple of hours and has never returned.

The officers of the defendant in injunction contend that the first trouble was

remedied in the way stated, and that the present trouble is therefore not due to defects in the press, but to lack of intelligent operation. There is no more reason, however, for supposing that the trouble, which has never been abated is now due to the lack of intelligent operation than the first, and the Gullett Gin Company upon investigation, found that the first was not due to that cause.

The testimony of the officers of the defendant in injunction, and the argument in its behalf, is, that Fornea and his employees did not look after the deflector and keep it in proper position, and that instead of keeping the lint evenly distributed under the tramper, they permitted it to pile up on one side of the press; that the powerful mechanically working ram, operating against more lint cotton on one side than the other necessarily resulted in an uneven bale. But nothing indicates that Fornea and his employees are not fully capable of operating a cotton press, such as the one in question. They knew that the lint cotton had to be distributed in the press evenly on all sides. They say that it was done as carefully as possible, but that uneven bales frequently resulted in spite of their efforts.

The evidence therefore shows that there were defects in this press when sold that renders its use so imperfect and inconvenient that Fornea would not have purchased it had the defect been known to him at the time. The value of the press, due to the defects that existed in it at the time, was a great deal less than the sum agreed to be paid.

Defendant in injunction claims that we should not have allowed a credit on $1200.00, the amount of the two notes representing the credit price of the press, when only the ram valued in the sale at $277.20 was defective, and this, the only defective part was by it replaced at its own expense, etc.

As heretofore stated the original vice has never been remedied. The changing of rams left the press still defective in operation. Then again, the ram was not valued in the sale at $277.20. The parts of the press were not valued in the act of sale separately; the only price fixed is that of the press complete. Fornea testifies that in buying the press he bought the complete unit. The act of sale and mortgage support him, and the petition of the plaintiff for executory process also supports him. It alleges that the petitioner sold to Varnado Gin Company the following described property: "1—Dbl box steel bound press complete, with hyd ram and cylinder, etc." The enumeration continues and various articles are mentioned, but none are separately valued, the price of the complete outfit being $1819.00. There is no evidence in the record as to the value of any of the parts which together form the press.

As for the suit on account, No. 4719, in which the plaintiff charges Fornea $277.00 on the grounds that the warranty stipulation contains a provision which obligates the buyer to lend friendly assistance in returning any of the defective parts, Gullett Gin Company contends that Fornea did not render its mechanic necessary assistance, after it was taken out of the press to load it on a truck so as to enable him to return it to the factory at Amite. Fornea testified without contradiction on this subject, that the Gullett Gin Company's officer promised to send over a new ram, take out the old one, install the new one, and take the old one back at its own expense. The Gullett Gin Company's mechanic called on Fornea to help him load the old ram on his truck, but Fornea

says without contradiction, that at the time the request was made his gin had just re-started, and that cotton wagons were waiting with cotton for the gin, some about to leave on account of the delay to which they had been subjected, due to the press. That in order to load the old ram on the truck, it would have been necessary for him to stop his gin, and use his entire force for a couple of hours or more. In such a situation, some other time to load the ram should have been agreeable. Then again, the old ram was defective, it may have no value, and the evidence does not show that it has any value. Under the circumstances we do not think that Fornea should be required to pay for the old ram.

Another item claimed of Fornea is on account of a tank. The evidence shows that the tank which first came with the press proved defective, and it was necessary to get another one in its place. The evidence does not show the value of this item. The Gullett Gin Company, is, of course, entitled to the tank not being used on the press, and when it sends for the ram, it can at the same time take the tank to which it is entitled.

Another item is on account of a follow-block. The follow-block that came with the press was broken while being used, but whether it was defective or broken as a result of Fornea's fault is not shown by the evidence, the charge however, is for a new one to take the place of the old one. The evidence does not enable us to say that the first follow-block was not defective like the ram and tank, as claimed by Fornea. The Gullett Gin Company was bound to replace defective parts without charge.

There are also other items claimed of small value. They were all used by Fornea in an effort to make the press work. We think that the Gullett Gin Company was obligated to furnish them without charge for the purpose stated.

A reconsideration of the two cases, has not changed our conclusion in any way, and for these reasons our previous opinion and decree herein is reinstated and now made the final opinion and decree of this Court in both cases.