McBRIDE, Judge.
This appeal presents for consideration an action in redhibition. The subject of the sale is a used #2 New Briten Chain Mor-tiser complete with motor, and belts and box of cutting equipment, which was purchased by plaintiff on January 28, 1950, f. o. b. New Orleans, for the price of $700, plus $14 sales tax, which amount was paid Chatry, the vendor, by plaintiff. In making the sale, E. H. Schmidt represented the vendor. About the middle of January 1950, the plaintiff visited Chatry’s establishment in New Orleans and viewed, in company with Schmidt, the mortiser in question. Chatry was also present. According to Chatry, he told Perkins that it was a used machine which had come from a plant in New Orleans, where it had been operating, and that he had sent it to a machine shop to have the bearings rebabbitted, and that the motor had been sent out for checking and repairing. Perkins contends that he was led to believe that the machine was a “rebuilt” one.
At any rate, the sale was consummated in Baton Rouge, Schmidt representing Chatry, on January 28, 1950. The sale agreement contains the following stipulation:
“If the above machine does not prove satisfactory within thirty days it can be returned for full refund of purchase price by assuming all transportation charges.”
The machine was delivered to plaintiff about January 31, 1950. The petition substantially alleges that it remained in storage in plaintiff’s premises in Baton Rouge until the plant which plaintiff was then building was sufficiently finished to permit of the installation of machinery therein, and that the mortiser was only installed and operated sometime in May 1950; that the mortiser did not function satisfactorily and would not perform the work which it was required to do and for which it was purchased, which fact was brought home to the vendor, who made efforts to adjust the machine, but that notwithstanding such atttempts at adjustment, the defects were not corrected. Plaintiff prayed for judgment against Chat-ry or Schmidt, or against both in solido, for $714, and for a rescission of the sale. Judgment was rendered against Chatry alone as prayed for, and this appeal was taken by him therefrom.
Counsel for appellant first contends that the import of the agreement is that the buyer had only thirty days within which to ascertain the existence of defects in the machine and to decide whether he would keep it, and that he cannot annul the sale thereafter for any reason.
While it was stipulated that the buyer might return the mortiser within thirty days and demand refund of the price, we do not think that the retention of the machine beyond the thirty days had the effect of divesting the buyer of his right to proceed against the vendor in an action of redhibition because of defects subsequently discovered. The agreement of sale does not provide, and it cannot be inferred from the language that the parties so understood, that if the plaintiff did not return the machine within thirty days such amounts to an admission on his part that the vendor’s warranties had been fulfilled. This case is unlike Fay & Egan Co. v. Roseland Box Co., 170 La. 602, 128 So. 649, wherein the agreement contained the specific stipulation that the retention of the property after thirty days would constitute a trial and acceptance and an acknowledgment that the vendor had performed all his obligations.
Appellant also argues that after receipt of the mortiser plaintiff had it dismantled, and that the machine was not properly taken care of nor properly serviced by competent workmen. We are satisfied that the *351 plaintiff did not dismantle the machine. After it reached his establishment, he engaged a crew of machinists to set up all of his equipment. The mortiser was thickly coated with grease when delivered, and the machinists removed the table and completely cleaned off all grease, and repainted the machine. The chains were also removed, which plaintiff explained was not a dismantling operation, as the removal of chains is necessary several times each day in normal operating procedure so that the machine can cut different size mortises. Plaintiff stated that removing the table from the mortiser was no greater operation than removing a wheel from an automobile.
The pivotal point in the case is whether the mortiser was subject to red-hibitory vices. Appellant’s counsel- argue that the only real complaint that plaintiff had was that the machine was noisy and would “aggravate” the operator. Our opinion, however, is that plaintiff successfully proved that the mortiser was so defective that it was unfit for the purpose for which it was purchased, and was of no use whatsoever in plaintiff’s plant, and that plaintiff had no knowledge or notice of the. defects when he purchased the machine.
The machine was first used in May 1950. When the current was turned on, the machine seemed to be “frozen.” A call was made to Schmidt in New Orleans, who was told that the mortiser would not operate. Schmidt proceeded to Baton Rouge,. and after working on the machine until the plant closed on that particular day, he left for New Orleans, being unsuccessful in getting the mortiser to function. The particular trouble seemed to be that the table could not be raised or lowered, and such motions of the table are necessary to a successful operation, for wood is Clamped to the table and is raised by it to the cutter, after which the table is lowered. A day or two later, Schmidt again journeyed to Baton Rouge and worked on the mortiser, but never did get it to operate properly. The machine was erratic and the movement of the table was not smooth. Schmidt, when notified later that there was also something wrong with the cutting bar of the machine, went to Baton Rouge and worked with the machine, but no appreciable improvement was evident in its operation. When wood was fed up to the cutting chain, mortises were being cut on an angle and not true. Schmidt’s testimony is that on the first occasion he corrected the defects in the machine by turning one screw thirty degrees, and that on another occasion he found that the machine was cutting a mortise on a slight angle, which he attributed to a slightly worn chain and bar. He claims that he took the bar with the saddle to New Orleans and had it refinished at a small cost, and that he brought it back to Perkins’ plant and installed it on the machine, which eliminated all of the trouble.
The weight of the evidence is diametrically opposed to Schmidt’s testimony. We entertain not the slightest doubt that the machine was defective, and that the imperfections existed when Perkins bought it. Its purpose is to cut mortises in millwork, and it is not hard to understand that if mortises are not cut true, loss of time and materials will be the result.
Finally, on June 8, 1950, Perkins addressed a letter to- Schmidt asking him to see Chatry about the latter taking the machine back. Chatry declined to do so. Perkins also inquired about a new machine to replace the used one which was defective, and did ultimately purchase a new machine, through Schmidt.
The further defense is made that Perkins’ complaints about the mortiser were unseasonable. We do not believe so, in view of the circumstances surrounding the purchase of the machine and the installation of it in Perkins’ plant. The evidence shows that at the time of the sale Perkins was enlarging and converting his plant in Baton Rouge, and was not in a position to test the mortiser sooner because of the lack of sufficient electrical current in the plant. Both Schmidt and the defendant knew this to be a fact, as it was shown that Schmidt sold plaintiff approximately $15,000 of equipment to be installed in the new plant upon its completion. We fail to see where the delay in testing the machine was unreasonable. Plaintiff, in view of the condition of *352 his plant, could not have tested it sooner, and the defendant was cognizant of plaintiff’s situation.
A warranty against redhibitory vices is implied in every contract of sale, unless expressly excluded. Nelson v. M. C. M. Truck Lines, 209 La. 582, 25 So.2d 236; Iberia Cypress Co. v. Von Schoeler, 121 La. 72, 46 So. 105; Levy v. Ebeyer & Winteler, 3 La.App. 500; Fairchild Auto Co. v. Reed, 12 Orleans App. 351; Eglin v. Rufin, Orleans No. 7529, see Southern Digest.
Article 2520, R.C.C., provides:
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
In Nelson v. M. C. M. Truck Lines, supra, the Supreme Court said [209 La. 582, 25 So.2d 237]:
“A piece of' industrial machinery possesses redhibitory vices if it cannot be successfully used for the operation for which it was constructed and sold. Rescission of the sale has been ordered when the machine possesses.hidden defects, so as to render its use unreasonable, inconvenient and unsatisfactory. Melancon v. Robichaux, 17 La. 97; Fee v. Sentell, 52 La.Ann. 1957, 28 So. 279; Crawford v. Abbott Automobile Co., Ltd., 157 La. 59, 101 So. 871; Evans v. Crumley, La.App., 1 So.2d 137; and other cases cited in IV Tulane Law Review at page 433, in a well-written article on ‘The Nature of the Redhibi-tory Action’.”
Alternatively, appellant points to R. C.C. art. 2521, which provides that apparent defects, such as the buyer might have discovered by simple inspection, are not counted among the number of redhibitory vices. The argument follows that when Perkins viewed the machine at the vendor’s establishment, accepted delivery, and retained it for a considerable time, he must be charged with having had knowledge of the defects. This argument, we feel sure, is not valid. Such defects as existed in the mortiser, which are in some detail set forth above, could not have been discovered by a visual inspection, and it stands to reason that the defects could only be brought to light when the machine was attempted to be operated under plant conditions.
 Appellant also raises the point in brief that plaintiff has no standing in court because it is not alleged nor shown that he tendered the mortiser back to defendant. We do not believe that whether or no there was legal tender plays any part whatever in this case. Appellant concedes that Perkins addressed a letter to Schmidt asking him to see Chatry about taking the machine back, and that Chatry declined ■ to do so. Such being the case, tender was unnecessary. The law does not require one to do a vain and idle thing, and because of Chat-ry’s refusal, in response to plaintiff’s letter, to accept the mortiser back, it is manifest that a tender would have served no good purpose. See Louisiana Highway Commission v. Bullis, 197 La. 14, 200 So. 805, and the authorities therein cited.
We believe, however, that the judgment appealed from should be amended in one respect. The judgment rescinded the sale and awarded plaintiff the price, but is silent as to the disposition of the machine. We think it should run in favor of the defendant to the extent of decreeing that he have restored to him the ownership of the mortiser.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended to the extent that it provide that the used #2 New Briten Chain Mortiser complete with motor, and belts and box of cutting equipment, be restored to the full ownership of the defendant, Milton P. Chatry; and as thus amended the judgment is affirmed. Appellant is to -pay the costs of this appeal.
Amended and affirmed.