HOOD, Judge.
This is a redhibitory action to rescind the sale of a shrimp boat and to recover damages. Judgment was rendered by the trial court in favor of plaintiff rescinding the sale, ordering the return of the purchase price, and decreeing that the ownership of the boat is restored to defendant. Defendant appealed. We affirm.
*691 The issues presented are: (1) Was the keel of the boat so infested with worms at the time of the sale that the vessel was un-seaworthy and unfit for the purposes for which it was intended? (2) Did plaintiff waive the implied warranty provided by LSA-C.C. Art. 2476, thus barring him from having the sale rescinded?
On April 2, 1968, plaintiff, Hampton J. Roche, purchased from defendant, Myrle Broussard, a used shrimp boat, known as the “Donna B,” for an agreed price of $1600.00. The boat was 30 feet long and 12 feet wide. It was built of cypress wood, was powered by a diesel engine, and was equipped with all of the hardware and implements needed for shrimp fishing.
Broussard had purchased the “Donna B,” as a used hull only, in 1964. Shortly thereafter he outfitted it with an engine, trolls, ropes and other equipment needed for shrimping, and he used it as a shrimp fishing boat from that time until a few months before it was sold to plaintiff. In 1966 the boat was taken to a shipyard in Lake Charles for regular repairs. Although the evidence is conflicting as to the information given to defendant, we are convinced that the operator of the shipyard informed Broussard that the keel of the boat was worm eaten, that the boat was un-seaworthy, and that the keel should be replaced. Broussard did not have the keel replaced. Instead, he had some minor repairs made to the boat, and he then resumed using it for shrimp fishing. The repairs made at that time consisted of changing three or four planks, plugging up some holes and pumping “sawdust and tallow in the keel to try to stop the leak.” Broussard testified that the boat did not leak excessively while he used it, and that it was not leaking when he sold it to plaintiff, although it had been idle at the docks for two or three months immediately prior to the sale.
On the day the sale was completed Roche began navigating the boat toward Lake Charles, and in route he docked it overnight at a point on the Intracoastal Canal. The next morning he found that the boat was leaking and he had to pump water out of it to keep it from sinking. He proceeded on to Lake Charles that day and upon arrival he took the boat to a shipyard, where it was hauled out of the water and inspected. The operator of the shipyard found that the bottom and keel of the boat were so worm infested and damaged that the boat could not be used, but would sink if allowed to remain in the water. He stated that it would have cost $800.00 to repair it at that time. Roche did not have these extensive repairs made, but instead he had the shipyard make some minor repairs to stop some of the leaks. The boat was then placed in a rental stall, and the shipyard operator advised plaintiff that it could not be taken out safely. The boat has never been used, and it has never been removed from the stall since that time.
Plaintiff went to the shipyard almost daily after purchasing the boat to pump water out of the vessel and to keep it from sinking. He continued to do that until sometime in November, 1970, or for a period of more than two and one-half years, when he found that the boat had sunk.
Plaintiff filed this suit on May 27, 1968, less than two months after he purchased the boat. On June 12, 1968, he amended his petition to allege that he makes full tender of the boat back to defendant, and on September 5, 1968, plaintiff made a more formal tender of the boat to defendant. At the time these tenders were made the boat was floating, and it apparently was in at least as good condition as it was when sold to plaintiff.
The operator of the shipyard testified that when he inspected the boat the day after Roche had purchased it, the vessel was in “bad shape,” that the “worms had practically eaten the bottom up,” and that “if he used it it was going to sink.” Defendant admits that some worms were *692 found in the boat in 1966, but he contends that all of the worm infested boards were removed at that time. L. J. Dupre who used this boat for shrimp fishing one year and who has operated other shrimp boats for many years, testified that he inspected the keel while the boat was at the shipyard in 1966, and that he saw no evidence of worms or worm damage in the keel at that time. He concedes that the operator of the shipyard recommended that the keel be changed in 1966 because of worm damage, but that Dupre objected since he found no evidence of worms.
The trial judge held that “at the time of the sale the ‘Donna B’ was defective in that its keel was infested with worms to the extent it was unseaworthy and that the plaintiff would not have purchased the vessel had he known of such defect.” We think the evidence supports that conclusion.
Defendant contends that plaintiff purchased the boat “as is” and without warranty of any kind, and that the parties understood that under no circumstances would any part of the purchase price be returned to plaintiff for any reason whatsoever. Roche denies that he purchased the boat “as is.” He contends, on the contrary, that in the negotiations Broussard assured him that the boat was seaworthy and was fit for use as a shrimping boat in the Gulf or in lake waters.
It is unnecessary for us to determine whether the boat was purchased “as is,” because we have concluded that plaintiff is entitled to rescind the sale because of a redhibitory vice even though the sale may have been made under those conditions or with such an understanding.
A purchaser is entitled to redhi-bition when the thing sold contains some vice or defect which renders it either absolutely useless, or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it he had known of the vice. LSA-C.C. Art. 2520. Warranty is implied in every sale, and the seller warrants its freedom from hidden defects or redhibitory vices. LSA-C.C. Art. 2476. The implied warranty provided in Article 2476 may be waived by the purchaser, but the burden of proving such a waiver rests on the seller. To establish that the implied warranty has been waived, the evidence must show that the waiver was express and implicit, and the evidence must be strictly construed. Lafayette Highway Equipment Sales & Service, Inc. v. Dixie Truck & Equipment Service, Inc., 179 So.2d 479 (La.App. 3 Cir. 1965); Breeden v. General Motors Acceptance Corporation, 140 So.2d 680 (La.App. 4 Cir. 1962); Fisher v. City Sales and Service, 128 So.2d 790 (La.App. 3 Cir. 1961).
The fact that a used moveable item is sold “as is” does not relieve the vendor of all warranties, but only puts the buyer on notice as to qualifications of the implied warranty in the sale. The thing sold must still be usable for the purposes intended, unless there is an express and implicit agreement between the parties to the contrary. Kuhlmann v. Purpera, 33 So.2d 84 (La.App. 2 Cir. 1947); Maddox v. Katz, 8 So.2d 749 (La.App.Orls.1942); Fabacher v. Ghisalberti, 18 La.App. 599, 139 So. 70 (La.App.Orls.1932); United Motor Car Company, Inc. v. Drumm, 3 La.App. 741 (La.App.Oris. 1926).
In United Motor Car Company, Inc. v. Drumm, supra, a used automobile was sold “as is.” The court held that that phrase modified the implied warranty, but that it did not operate as a waiver of all warranty. The court said:
“ * * * We would not wish to be understood as holding that the presence of these words (as is) in a contract of sale would amount to a waiver of all warranty by the purchaser. But, certainly, the phrase modifies the warranty implied. If, however, the thing sold, the automobile in this case is not fit for the use for which it was intended; for example, if it would not run, the fact that it *693 was sold ‘as is’ would not prevent a recission of the sale, for one of the characteristics of an automobile, as its name suggests, is the ability to run on its own power.” (Emphasis added).
In Maddox v. Katz, supra, the Orleans Court of Appeal said:
“Similarly, the sale of a table, even an old and secondhand table ‘as is’, does not relieve the vendor of all warranty. The table sold under such circumstances must be fit for use as a table, but it is certainly not warranted to be in perfect condition, free from all defects which usage and age might cause. * * * ” (Emphasis added).
In Fabacher v. Ghisalberti, supra, the court observed by way of illustration that:
* * the purchaser of a secondhand automobile ‘as is’ is entitled to receive an automobile which will run on its own power.”
In the instant suit the evidence shows that Roche informed defendant that he was purchasing the boat for use as a shrimping boat in the Gulf and in lake waters. Defendant admits that he told plaintiff “I used it in the Gulf. You can, too.” There thus was no express or implicit waiver of the implied warranty that the boat was suitable for the purposes for which it was intended.
Our conclusion is that even though the boat may have been sold to plaintiff “as is,” such a sale did not relieve the vendor of the implied warranty that the vessel would float, or that it was suitable for use as a shrimping boat in the Gulf or in lake waters. The evidence shows that it was not fit for such use. We find, as did the trial judge, that plaintiff did not waive that implied warranty in this instance, and that he is entitled to have the sale rescinded.
The judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.