260 So.2d 919 (1972)
Earl JUNEAU
v.
BOB McKINNON CHEVROLET COMPANY, Inc.
No. 4845.
Court of Appeal of Louisiana, Fourth Circuit.
April 18, 1972.
*920 Henican, James & Cleveland, Carl W. Cleveland, New Orleans, for plaintiff-appellee.
Deutsch, Kerrigan & Stiles, Robert E. Kerrigan, Jr., New Orleans, for defendant-appellant.
Before REGAN, REDMANN and BOUTALL, JJ.
BOUTALL, Judge.
A sale of a used automobile was rescinded by the district court, and $400.00 damages and attorney's fees were awarded plaintiff, as it was found defendant had knowledge of the defect before sale, and did not inform the buyer of it. Defendant's reconventional demand for $250.00, representing the amount of a check given by the vendee for the balance of the purchase price of the car, on which the vendee had stopped payment, was denied. Defendant now appeals.
Earl Juneau purchased from the defendant, on August 6, 1970, a used 1964 Ford Falcon station wagon. Sale was completed by delivery of the thing on Saturday, August 8. Mr. Juneau picked up the car from defendant's premises and drove it home. The next day, Sunday, Mr. Juneau took his family out for a drive along the lakeshore in New Orleans, when suddenly the engine overheated, clattered, smoked and hissed steam. Mr. Juneau pulled to the side of the road; the engine stalled and could not be restarted. Upon opening the hood, he saw steam escaping from several *921 places, smoke, and oil leaking out and burning on top of the engine. After letting the engine cool off for about an hour and a half, Mr. Juneau still could not restart it. It was then towed back to the vendor's premises, parked, and locked. The next day, Monday, the difficulties were explained to the vendor, and one of vendor's mechanics the following day informed Mr. Juneau by phone that the radiator was defective, and the valves were bad. Mr. Juneau then tendered the car back to the vendor, asking for return of the purchase price, which was refused by the vendor. Mr. Juneau thereafter stopped payment on a $250.00 check given with the balance in cash, for the car.
Defendant does not seriously deny the above facts, but contends that when the car was returned, the only defect which could be found was a bad idler pulley (a part of the system which operates the water pump) which was replaced at a cost of $10.00 or so, and that Mr. Juneau was informed of this minor defect having been repaired at vendor's cost and arbitrarily refused to take the car, since the vice was not so serious as to be grounds for redhibition (LSA-C.C. art. 2520). Defendant also alleges that the sale was made "as is" to which the vendee agreed, and that vendee's rights to sue for a rescission of sale were thereby waived.
The record reflects the sequence of events occurred thus: On the Thursday before the sale, Mr. and Mrs. Juneau saw the car on McKinnon's lot and talked with Ross Salvaggio, McKinnon's salesman about purchasing it. Edward Block, McKinnon's sales manager, also approached Mr. Juneau. There was some conflict as to the deal made; the plaintiff testified he was offered the car for the full price, and a 90-day warranty. Defendant's witnesses testified that the sales price was modified by taking off $100.00 from the first price asked Mr. Juneau. Block testified the sale was to be "as is" because of this reduction, but that this was told to Salvaggio and not directly to Juneau. Salvaggio testified that the sale was made without any express warranty given on the car, but not "as is". This conflict is of no import to a determination of the case, as will be discussed shortly.
Juneau wanted to test drive the car, and found the battery had to be charged before it would start. This done, the car, after being driven about a mile, stalled, necessitating another charge. It was agreed to replace the battery, and also to add a jack and spare tire before delivery. Upon return, the car made some noise and when the hood was opened it was discovered that the idler pulley was not turning. This also was agreed to be replaced, and Mr. Juneau agreed to purchase the car subject to this work, and paid $164.00 down. A written receipt was given, upon which no warranties or conditions whatsoever appear. A printed form was filled out, which is an order sheet containing blanks to be filled in for all information about the automobile and sale. On it was printed, "This order is not binding until accepted by dealer", and also a clause which is an express and specific waiver of all warranties and waiver of all rights to sue for rescission of the sale or reduction in price. This form was partially filled in but not signed by any party.
On Saturday, August 8, 1970, Juneau returned, paid the balance due, but noticed that the stipulated work had not been done. Mr. Rafael Elvir, McKinnon's used car mechanic, replaced the pulley at once, and added the specified equipment. Mr. Juneau signed a printed order form identical to the one previously filled in, upon which several writings were made, which are recognizable as a computation of price with tax and title fees, etc., added, and a listing of the work done and parts added to the car that day, along with several undecipherable inscriptions. This form was initialled by Mr. Block, but is undated. No contention is made, and indeed all testimony negates the fact, that this document is the entire contract of sale between the parties. Much of the contract was verbal, and *922 from the previously noted testimony, the trial court believed, as do we, that the intention of the parties clearly did not contemplate an express waiver of all warranties. At most, the parties agreed to a sale "as is".
1. A sale made "as is" is not a waiver of all warranty. The vendor is not relieved of the implied warranty under article 2520 that the thing must be fit for the use for which it is intended; the "as is" stipulation, especially in a sale of a used thing, means that the thing is not warranted to be in perfect condition and free of all defects which prior usage and age may cause. Maddox v. Katz, 8 So.2d 749 (La.App.Orleans, 1942); the car must run under its own power. United Motor Car Co., Inc. v. Drumm, 3 La.App. 741, Orleans, 1926. The warranty not excluded by an "as is" sale is that the car is in running condition; mere poor qualities or condition will defeat rescission of the sale. Roby Motors Co. v. Cade, 158 So. 840 (La.App.2nd Cir., 1935).
It is the settled jurisprudence of this State that a waiver of the warranty implied in law, that the thing be fit for the use intended, must be specific and unequivocal, and any such alleged waiver will be strictly construed. This waiver of warranty must be specifically included in the sale. Bernin v. Gauarino, Orleans No. 8157, 5 Peltier's Orleans App. 210, 1921; Levy v. Ebeyer & Winteler, 3 La.App. 500, Orleans, 1926; Perkins v. Chatry, 58 So.2d 349 (La.App.Orleans, 1952); Stumpf v. Metairie Motor Sales, 212 So.2d 705 (La.App. 4th Cir., 1968); Roche v. Broussard, 252 So.2d 690 (La.App. 3rd Cir., 1971).
We note that in the present case, the printed forms, containing a purported waiver of warranty ignored by the parties were but a part of the whole contract and that the parties actually contemplated a sale "as is". Therefore, if a redhibitory vice is shown in the thing, an action for redhibition will be maintained.
2. A defect in the thing sold, hidden from normal inspection, has been proven by uncontroverted evidence. The car overheated badly to the extent of stalling out and could not be restarted; it leaked water (steam) and oil. There is a great likelihood of internal damage. Mr. Juneau's testimony is that, when he contacted McKinnon after the car was to be checked, a mechanic named Wally (identified as an employee of McKinnon by Mr. Elvir) told him the valves and the radiator were bad. Defendant's mechanic, Elvir, qualified as an expert mechanic, testified that if a car overheated so much as to stall the engine, this would cause damage to the interior of the engine. He also testified that although he had not worked on the car since the day of sale, that he had seen it on the lot and that on the day of trial it was not in running condition. Defendant contends that the car was repaired completely by replacement, again, of the idler pulley, and that it was offered back to Mr. Juneau, However, the defendant refused to let Mr. Juneau take the car to be inspected by another mechanic until he paid the amount of the check on which he had stopped payment, although Mr. Juneau offered to pay the balance if the car was inspected and found to be in good shape. It is clear that the car contained a vice which rendered it unfit for the use for which it was intended; it did not run. There is no evidence before us to show that the car was restored to running condition. Indeed, even if there is a possibility the defect can be repaired in the future, or later found to be only a minor defect, if the car at the date of trial still is seriously imperfect, rescission is proper. See Stumpf v. Metairie Motor Sales, supra; also Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 247 So.2d 266 (La.App. 4th Cir., 1971).
3. The defect must have existed at the time of sale for an action of redhibition to be maintained. Article 2530 of the Civil Code creates a presumption that *923 the defect existed at the time of sale if it appears in the thing within three days following the sale. Here, the car broke down the very next day. Defendant offers no evidence to rebut this presumption and it must stand.
4. Although the plaintiff must prove that a redhibitory defect exists, in a piece of complicated machinery such as an automobile, he need not prove the cause. The case of Peters v. Pattison Pontiac Co., Inc., 259 So.2d 99, recently handed down by this court on March 7, 1972, contains a discussion on this point. It suffices here that, the defect amply proved, there is no contention by the vendor of abuse, or any other cause save a redhibitory vice.
5. A tender back to the vendor has been shown by the plaintiff. When Mr. Juneau, after returning the car to McKinnon, learned of the condition of the car, he stopped payment on his check and asked for a return of the cash balance previously paid. This is an effective tender, as the car remains in vendor's possession.
6. Plaintiff asks for attorney's fees as damages under the recent amendment to article 2545, Act No. 84 of 1968. To recover, the plaintiff must prove knowledge of the vice before sale on the part of the vendor. He need not allege fraud or willful misrepresentation; mere knowledge, actual, or constructive, is enough.
In Barker v. Phoenix Insurance Co., 220 So.2d 720 (La.App. 2nd Cir., 1969), writ refused 254 La. 134, 222 So.2d 883, an automobile purchased by the plaintiffs crashed because of a defective steering column, and the vendor was sued for damages under article 2545. It was found that vendor acquired the car as a trade-in knowing it had been wrecked, rebuilt it, and then resold it. A crack in the steering mechanism was found to have been overlooked in this rebuilding and a part of the steering linkage, bent in the wreck, had not been fully straightened. Later, the steering shaft broke in half at the site of the crack, causing the accident. The court cited Drummond v. American Insurance Company, 159 So.2d 61 (La.App. 1st Cir., 1963) and Blashfield, Cyclopedia of Automobile Law and Practive, Vol. 7a, page 204, Sec. 4812 in charging the dealer in used motor vehicles with "knowledge of patent defects or defects which are discoverable in the exercise of ordinary care". 220 So.2d at 724.
In the present case, the testimony of Rafael Elvir, reveals that when the defendant acquired the car for resale, the car was overheating. The radiator was found to be defective; it was broken, leaking, and badly corroded inside. Elvir sent the radiator to the shop for repairs a few weeks before it was sold to Mr. Juneau. He did not testify that it was ever road tested or used at all until Mr. Juneau drove it to try it out. Mr. Juneau went only a short distance before the car stalled. Although the salesman attributed this to a low battery at the time, the evidence of Elvir and the salesman show the engine also to be overheated. It was then discovered that the idler pulley was frozen and not turning, thus preventing the cooling system from working. On its first use for any distance, the engine overheated and caught fire. Obviously, the condition of overheating, which the car originally had, was never corrected.
This is sufficient to invoke the rule in Barker v. Phoenix, supra, in that McKinnon had inspected the car, and either found a defect and did not repair it or test the car properly after repair or overlooked other defective engine conditions. A short period of use by the vendee was sufficient for manifestation of the defect. Constructive knowledge of the defect was therefore charged to the vendee by the trial court.
For these reasons, the decision below is affirmed, rescinding the sale, returning title in the automobile to the vendor, ordering return of the purchase price and expenses *924 of sale of $564.00 plus $400.00 attorney's fees to the vendee, together with legal interest from date of judicial demand until paid, and dismissing defendant's reconventional demand. All costs are assessed against the vendor.
Affirmed.