277 So.2d 204 (1972)
R. O. ROY & COMPANY, INC., et al., Plaintiffs-Appellants,
v.
A & W TRAILER SALES et al., Defendants-Appellees.
No. 11957.
Court of Appeal of Louisiana, Second Circuit.
November 28, 1972.
On Rehearing April 3, 1973.
Rehearing Denied May 1, 1973.
Booth, Lockard, Jack, Pleasant & LeSage, by Henry A. Politz, Shreveport, for R. O. Roy & Co., Inc., and Robert A. Roy, plaintiffs-Appellants.
Mayer & Smith, by Charles L. Mayer, Shreveport, for Horace H. Alvord, III, d. b.a. A & W Trailer Sales, defendant, third-party plaintiff, appellee.
Cook, Clark, Egan, Yancey & King by Gordon E. Rountree, Shreveport, for Winnebago Industries, Inc., defendant, third-party defendant, appellee.
Before AYRES, PRICE and HEARD, JJ.
Before AYRES, PRICE, HEARD and HALL, JJ.
Rehearing En Banc Denied May 1, 1973.
AYRES, Judge.
This is an action in redhibition wherein plaintiff Robert A. Roy seeks the rescission of a sale of a 223, 1969 model Winnebago travel trailer and the return of its purchase price. This trailer, sold to plaintiff by the manufacturer's dealer, Horace H. Alvord, III, b.d.a. A & W Trailer Sales, was manufactured by Winnebago Industries, Inc. Both manufacturer and plaintiff's vendor were made defendants.
*205 Defendant Alvord, through a third-party proceeding, seeks to recover from Winnebago any amount for which he might be condemned unto plaintiff.
Plaintiff's cause of action is predicated upon defects and vices in the trailer hidden from and unknown to him and which were not revealed by defendants at the time of the purchase. These vices and defects were allegedly of such nature as to render the trailer either absolutely useless or its use so inconvenient and imperfect that it must be supposed the buyer would not have purchased it had he known of their existence. LSA-C.C. Art. 2520.
Defenses urged by defendant Alvord are:
1. A denial of the existence of any vices or defects in the trailer;
2. A showing that the trailer had been involved in an accident during its use by plaintiff;
3. That he was unaware of any such defects claimed by plaintiff.
Defendant and third-party defendant, Winnebago Industries, Inc., denied:
1. There was anything structurally wrong with the trailer or that the trailer failed in any respect, and contended plaintiff did not carry his burden of proof and establish that the trailer was defective so as to render it absolutely useless, or that its use was so inconvenient and imperfect that it must be supposed the buyer would not have purchased it had he known of the vices; and asserted.
2. In the alternative, that plaintiff had not shown that, on account of the extended and continuous use of the trailer, the former status quo of the parties might be reestablished by the return of the trailer;
3. That plaintiff's cause of action, if any, was against plaintiff's vendor and not against the manufacturer; and
4. That Alvord, d.b.a. A & W Trailer Sales, had waived, as against the manufacturer, the statutory warranty of redhibitory defects by written agreement.
Based primarily upon a finding that plaintiff had not borne the burden of proof imposed upon him by law, the court rejected plaintiff's demands.
The vices and defects in the trailer of which plaintiff complains are principally the lack, or want, of sturdiness due largely to an improper or defective design. These vices, he contends, were made manifest after only slight use in these respects:
1. The entrance door would not remain closed, latched, or locked, particularly during periods of travel;
2. The aluminum exterior siding cracked or was torn at the upper corners of the door opening from which cracks radiated outward;
3. There was a failure in the bonding or lamination of the aluminum exterior portion of the walls and roof with the Styrofoam core and the core with the interior walls and ceiling which are of plywood construction. Thus, it is contended the roof and walls were weakened and their capability to withstand stress and strain was lessened.
4. A shifting away or a separation of the interior walls from the wardrobes, cabinets, and refrigerator occurred through a slanting shift of the trailer side-walls;
5. Stress marks in the form of ripples in or bending of the alumimum sheeting were in evidence where the aluminum siding became unbonded from the Styrofoam core;
6. The weld attaching the spring hanger to the trailer frame on the right side broke.
Certain of the facts were either established or uncontroverted. Plaintiff Robert *206 A. Roy purchased the trailer, which was new, for a consideration of $4,792.70 from Alvord, d.b.a. A & W Trailer Sales, on December 20, 1968, and accepted delivery on Christmas Eve. Although, for convenience, title was placed in the name of R. O. Roy & Co., Inc., a closed, family corporation owned by plaintiff and his father, the trailer was purchased by and for plaintiff Robert A. Roy in his individual capacity.
Winnebago's brochure, in describing the trailer, represented:
"For those who want to step up to the ultimate in comfort and convenience, yet retain the easy mobility of a travel trailer, Winnebago's new 23-footer provides the answer. You step into a living room area with comfort-height daveno [sic] and lounge chair, tastefully upholstered in the newest high quality quilted fabrics. For dining an extension table folds out of the wall. Large galley has a full 6-cubic foot gas/electric refrigerator, 4-burner LP gas range and double bowl sink with ample counter area. Optional bolsters convert the twin beds into lounges for daytime convenience. Set off by a folding door is a rear dressing room-bathroom suite with separate shower and built-in lavatory. Winnebago's 223 has an unmatched number of storage cabinets and compartments for extended travel-living."
The trailer, a vehicle of indeed great elegance, is equipped with Thermo-Panel side-walls, roof, the door. The walls and door are constructed of a Styrofoam core 1½" thick, bonded outside by sheet aluminum and inside by 1/8" wood paneling. The roof is similarly constructed except that the core is only ¾ thick. The entrance door and its opening, with unreinforced square corners, is located several feet to the rear of the right-hand corner of the trailer. The interior paneling is prefinished and the floors are overlaid with vinyl tile.
Soon after delivery of the trailer, Mr. and Mrs. Roy, on occasions, accompanied by their son, made three trips of consequence in the trailer. The first trip was to Winslow, Arizona, spanning the period from December 27, 1968, to January 11, 1969, and covering 2,500 miles; the second, to Mexico, spanning the period from March 30, 1969, to May 2, 1969, and covering 3,800 miles; the third, to Dallas, Texas, spanning a shorter period from May 22, 1969, to May 26, 1969, covering 375 miles. The only other use made of the trailer was a trip to Toledo Bend in June of 1969, covering 166 miles. Thus, the trailer traveled a total of only 6,841 miles from the time of its purchase until it was returned to the Winnebago factory. The record discloses that a Winnebago trailer, free of vices and defects, could reasonably be expected, as a minimum, to travel a distance of 100,000 miles.
The record further discloses that the trailer was used only on improved principal highways. It was involved in no mishap other than that which occurred when it was backed slowly on a parking lot at Sanborn's in Laredo, Texas. The left rear corner struck a telephone booth, scraping and denting the outer surface for approximately one foot in addition to breaking a rear windowpane.
No difficulty was experienced on the first trip other than that the door came open once or twice while the trailer was under way. On the second trip, the door occasionally opened while the trailer was under way and once while at rest in the middle of the night, letting in a draft of cool air. Upon returning from the Mexico trip and while cleaning the trailer, plaintiff observed a hairline crack or tear radiating from the top forward corner of the door opening. At the time, the crack was approximately three inches long. Noticed also were a wrinkling effect and deformation lines along the top of the trailer. Plaintiff discovered that the aluminum sheeting, referred to as the "outer skin" of the trailer, had come loose from the core. This condition was noted on both sides of the trailer but more prominently on the *207 left, or road, side. The inside wall paneling separated from the wall, as did the wardrobe, TV shelf panel, and the cabinets above the sink. The impact of the trailer in striking the telephone booth was only minor. The trial court found, and with this conclusion we agree, that this accident only slightly damaged the rear of the trailer and was of no consequence so far as concerned the complaints registered by plaintiff.
On the trip to Dallas, the door repeatedly opened on numerous occasions. Finally, plaintiff shut the door and tied it closed. In returning to Shreveport, on the occasion of that trip, Roy stopped en route and called Alvord to inform him of his great distress. Upon returning home, Roy found that the structural deterioration was worsening and expressed an intention to place the trailer in storage pending its return to the dealer and ultimately to the manufacturer. Alvord was informed that plaintiff would seek a return of the purchase price.
The inadequacy of the trailer's design and the insufficiency of its structure are made to appear from these physical facts:
1. The appearance of fatigue cracks above the upper corners of the door;
2. Strain, wrinkles (deformation lines) on top and under portions of the outside surfaces of both sides, particularly on the curb side;
3. Separation of the aluminum siding from the Styrofoam core;
4. Separation of the wardrobe from the side-wall, carrying related parts toward the center of the trailer;
5. Twisting and separation of the paneling behind the TV shelf in a counterclockwise direction;
6. Separation of cabinets over the sink;
7. The continuous malfunctioning of the door lock and latch.
The cause and the effect of the aforesaid manifest vices and defects were the subject of discussion of two expert witnesses appearing before the court. Joseph H. Barnwell testified for plaintiff and Joe L. Davis, III, for defendants. Both witnesses were experts in their fields of study applicable to the situation presented here.
Barnwell, a professor in mechanical engineering at Louisiana Polytechnic Institute, possessed a B. S. degree in electrical engineering with a minor in mechanical engineering and a Master of Science degree from Texas A & M University. He also pursued further studies at Massachusetts Institute of Technology.
Barnwell's professional career included employment with Western Electric Company, experience in a machine shop, and the teaching of machine tool laboratory courses, including mathematics. While employed by General Electric at Schenectady, New York, plaintiff advanced from project engineer to supervisor of a machinery development section. A large part of his work was with the nuclear center in the State of Washington, and he was involved in the development of nuclear reactors. For a year, he was manager of the reactor container and service unit in an atomic power laboratory under the supervision of General Electric. His unit performed the engineering on the nuclear submarine Titan. He later taught kinematics, a study of motion, and engineering anaylsis, dynamics, and strength of materials, as well as design of mechanical machines. His studies and work included structural stresses and strains. Work in the machine shop included the building of a trailer.
Davis, a graduate of Louisiana State University in 1948, was likewise eminently qualified as a civil and structural engineer with many years of experience. His career was primarily with the building trade. He, however, had experience in designing bridges for the Arkansas Highway Department. He was a design engineer for Industrial Steel Products Co., Inc., and for E. M. Freeman & Associates, both of Shreveport.
*208 We do not deem it necessary to review in detail the testimony of Barnwell or Davis, both of whom testified at great length during the four-day trial of this cause.
Barnwell thoroughly explained his observations, findings, and conclusions as well as the pertinent controlling engineering and mathematical principles involved. The proof left no room for doubt as to his conclusions that:
1. This trailer is inadequately designed and is unfit for the purpose intended;
2. The defects complained of, making the trailer unfit, are in no way connected to the incident involving the telephone booth;
3. The repairs do not overcome the design and construction defects, and the problems will recur when the trailer is put back into the customary use of recreational trailers.
Davis agreed with Barnwell that the side-walls of the trailer served as trusses and that the points of maximum-stress concentration were above the door. He agreed that the adequacy of the bonding of the side-wall components was particularly important where apertures such as the door were cut in the side-wall, and conceded that substantial separation of the outer aluminum sheet from the core would weaken the structure. He testified very frankly that as an engineer he would have placed reinforcement above the door to compensate for the loss of strength occasioned by the cutting of the door through the sidewall.
From a review of the record, the conclusion is inescapable that these vices and defects were abundantly established, and that they resulted from an inadequate and improper design, particularly the failure to provide adequate supports to compensate for the increased stress and strain due to the unsupported door opening. The separation of the materials in the side-walls and top was due to the lack of effective bonding or lamination of the three component parts of the wall.
Plaintiff has, in our opinion, sufficiently and adequately established by a preponderance of evidence that the use of the trailer, by reason of the vices and defects, was made so inconvenient and imperfect that it must be supposed the buyer would not have purchased the trailer had he known of these vices and defects, and that these vices and defects continue, as pointed out by Professor Barnwell, notwithstanding the repairs made by the manufacturer after plaintiff had tendered or returned the trailer and demanded a refund of the purchase price. Support added to the door, or to the door's opening, consisted of a steel plate 5" x 6" attached by screws to the door corner openings which afforded little, if any, support.
In Cain v. Rapides Dodge, Inc., 207 So. 2d 918 (La.App., 3d Cir. 1968), and in Reech v. Coco, 223 La. 346, 65 So.2d 790 (1953), it was expressly recognized that the subsequent repair of a defective automobile after return of the automobile was made would not affect the fact that the vehicle was unsatisfactory and unfit for the purpose for which it was purchased. Thus, the fact that the automobile therein involved was defective at the time of the sale but subsequently repaired, could not affect the purchaser's right to a rescission of the sale.
However, it is well settled that in an action to set aside a sale on a plea of redhibition, where complicated machinery is involved, it is not necessary that the purchaser seek out and prove a particular and underlying cause of the defects which make the object purchased unfit for its intended use. It is sufficient that he allege and prove that such defects exist. Stumpf v. Metairie Motor Sales, Inc., 212 So.2d 705, 709 (La.App., 4th Cir. 1968) and the authorities therein cited.
*209 In this connection, it may be pointed out that Winnebago, as the manufacturer of the trailer, is charged with knowledge of its vices and defects. Tuminello v. Mawby, 220 La. 733, 57 So.2d 666 (1952).
Nor do we find any merit in defendants' contention that by plaintiff's use of the trailer it has depreciated to such an extent that the defendants cannot be restored to their former status. The principle is well established that, if a vehicle is not suitable for the purpose for which it was intended, the seller, upon a rescission of the contract of sale, is not entitled to credit for depreciation and use of the vehicle during the time the seller was attempting to repair it. Brown v. Mid City Motors, Inc., 248 So.2d 27, 30 (La.App., 1st Cir. 1971), and the authorities therein cited.
Although the purchaser of an automobile in Reech v. Coco, supra, had driven the car 9,600 miles, it was held he would not be prejudiced or prevented from rescinding the sale on the ground that his use of the automobile had made it impossible to return the property to the seller in substantially the same condition as when sold, especially in view of the fact that the seller was led to believe the defects would be corrected.
For these reasons, the sale should be rescinded and the purchase price returned to plaintiff by his vendor, plus plaintiff's expert-witness fees and costs aggregating $761.00.
The defendant Winnebago Industries, Inc., contends that no recovery may be had against it by its dealer under a warranty agreement existing between them. In this regard, it may be pointed out that in a sales agreement existing between Winnebago and A & W Trailer Sales it was stipulated:
"The manufacturer makes no warranty, expressed or implied, with respect to its products, except its standard written warranty."
The appropriate provisions of the warranty referred to recite:
"Winnebago Industries' exclusive `Thermo-Panel' Construction is guaranteed against defects in material or workmanship for the lifetime of the Winnebago Travel Trailer to the original purchaser of the trailer.
"Winnebago Industries, Inc., warrants each new WINNEBAGO TRAVEL TRAILER (including original equipment placed thereon by Winnebago Industries, Inc.) for a period of ninety (90) days from date of original delivery to the purchaser of each new WINNEBAGO TRAVEL TRAILER as shall under normal use and service appear to have been defective in workmanship or material. This warrant shall be limited to shipment to the purchaser without charge, except for transportation, of the part or parts intended to replace those accepted by Winnebago Industries, Inc., to be defective." (Emphasis supplied.)
The provisions of this warranty are contradictory in stating that the warranty exists for the lifetime of the trailer, followed by a purported limitation of such warranty to a period of 90 days. The warranty is, therefore, ambiguous. An exclusion or waiver of warranty by which parties take themselves out of the coverage of specific or general law and make a law unto themselves must be strictly construed. Harris v. Automatic Enterprises of Louisiana, Inc., 145 So.2d 335 (La.App., 4th Cir. 1962); Stumpf v. Metairie Motor Sales, Inc., supra.
Specific provisions are provided in the Civil Code for the protection of buyers from vices and defects in the things sold. Such vices and defects are denominated redhibitory vices. The obvious intent of the provisions of the Code is that purchasers have a right to assume that a thing purchased is suitable for the purpose intended, and that they may safely rely upon this as an implied representation.
*210 Thus, to constitute a valid waiver of this protection, the waiver must be specific and unequivocal.
With respect to a manufacturer's express warranty in connection with a sale by its dealer of air-conditioning equipment, Justice McCaleb, now Mr. Chief Justice, pointed out in Radalec, Incorporated v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830, 832-833 (1955):
"Nor do we find any merit in defendant's contention that its written warranty excluded the implied warranty of fitness provided by law. The express warranty guaranteed the machines against defective material and workmanship and obliged the manufacturer, during a period of one year from delivery, to supply new parts whenever it was shown to the manufacturer's satisfaction that any particular part of the machine was unsound. But this warranty did not state that it was given in lieu of all other warranties implied by law or that, in case the machines failed to perform the function for which they were manufactured, the defendant would be relieved of all responsibility other than that expressly stated for replacement of parts by reason of defects in material and workmanship.

"Under Article 2476 of the Civil Code, the warranty against hidden defects and redhibitory vices is implied in every contract of sale unless expressly excluded, see Nelson v. M. C. M. Truck Lines, 209 La. 582, 25 So.2d 236, and Article 2474 declares that "The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him'. Accordingly, even if it be liberally conceded that the defendant actually intended to restrict its entire liability to a replacement of parts, it would still be responsible, as the alleged limitation in the contract does not plainly signify such an aim." (Emphasis supplied.)
We are reluctant to reverse the finding of the trial court based primarily on questions of fact. However, as was pointed out in Owens v. Felder, 35 So.2d 671, 672 (La.App., Orl.1948):
". . . but in a case, such as we are presently analyzing, it is a selfevident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial."
See, also: Barker v. Phoenix Insurance Company, 220 So.2d 720 (La.App., 2d Cir. 1969writ refused, 254 La. 134, 222 So.2d 883).
Accordingly, for the reasons assigned, the judgment appealed is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed that the sale, from Horace H. Alvord, III, d. b. a. A & W Trailer Sales, to plaintiff, of the trailer involved here be, and it is hereby, rescinded, annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed there be judgment herein in favor of plaintiff Robert A. Roy and against defendant Horace H. Alvord, III, d. b. a. A & W Trailer Sales, for the full sum of $4,792.70, with legal interest thereon from judicial demand until paid, and for all costs of this suit, including the expert-witness fees and costs of Joseph H. Barnwell aggregating $761.00; and
It is further ordered, adjudged, and decreed there be judgment herein in favor of defendant and third-party plaintiff, Horace H. Alvord, III, d. b. a. A & W Trailer Sales, against the third-party defendant, Winnebago Industries, Inc., for the full sum of $4,792.70, with legal interest thereon from judicial demand until paid and for all costs and as awarded plaintiff against the third-party plaintiff.
Reversed and rendered.

*211 ON REHEARING
HALL, Judge.
In this redhibitory action, the district court rejected plaintiff's demands. On appeal, our original decision reversed the judgment of the district court, rescinded the sale and ordered a return of the purchase price. On rehearing, we set aside our original decision and affirm the judgment of the district court.
The background facts are correctly set forth in our original opinion. We now conclude, however, plaintiff is not entitled to redhibition for the reasons that (1) the defects proven are in themselves relatively minor; and (2) plaintiff has failed to prove by a preponderance of the evidence that the trailer is structurally unsound due to faulty design so as to render it unfit for its intended purpose and use.
The specific defects complained of by plaintiff and proven on trial of the case are relatively minor and have been repaired.
The door to the trailer kept coming open, in spite of attempted repairs by the dealer after the first trip. On inspection at the Winnebago factory, it was determined the door latch was bent or recessed at an angle so that the striker would not properly fit in the opening causing a tendency to slip out. This problem was corrected by replacing and refitting the parts involved.
Hairline cracks two to three inches in length developed at the upper corners of the door. At the Winnebago factory, four by five inch galvanized steel plates of sixteen gauge thickness were placed in each corner under the original outer aluminum skin and fixed in place with pop rivets. A new layer of aluminum skin was put over the old metal, laminated, and steel screws inserted through the layers of metal.
Slight waves or wrinkles were noted in the outer aluminum skin at the top of the trailer on the curb side to the rear of the door. These wrinkles presented no problem in themselves and called for no repairs.
In some spots on both sides of the trailer, an oil canning effect was noted. The outer aluminum skin could be punched in and would pop back out. Again, this item did not present any problem insofar as appearance or use of the trailer is concerned.
The bottom part of the wardrobe closet separated from the plywood interior wall less than an inch. It was repaired by moving back into place and adding more screws. There was a small gap between the bottom shelf in the wardrobe and the wallagain a very minor item.
There was a slight separation of the shelf over the refrigeratoralso called the TV shelfwhich was repaired by inserting a screw left out in the original manufacturing process. There was a slight crack or separation at the bottom of the cabinet over the sink from the wall which was due to a one-eighth layer of material between the cabinet and the wall that did not come down all the way to the bottom of the cabinet. This was the way the cabinet was manufactured and presented no problem at all.
Thus, we find the specific items complained of to be minor in nature and of no serious consequence insofar as use of the trailer is concerned. Those items that called for repairs were repaired by the manufacturer at its first opportunity to do so and without expense to plaintiff.
The defects complained of have significance only if, as contended by plaintiff, they are actually early manifestations of a basic structural weakness in the trailer caused by faulty and improper design. Plaintiff contends the trailer is structurally *212 unsound and, in spite of the repairs made, will continue to deteriorate under normal use.
Plaintiff's well-qualified expert, Dr. Barnwell, expressed the firm opinion, based on his examination and experiments, that the trailer was improperly designed for its intended use. It was his opinion that the square cornered door caused undue stress concentration resulting in the hairline fatigue cracks at its upper corners. It was also his opinion that the door weakened the entire structure, making it more susceptible to a torsion or twisting effect while being put to normal highway use. The torsion effect, in his opinion, caused the separation of the outer aluminum skin from the styrofoam core (the oil canning effect), the separation of the various items from the interior walls, and stress marks on the side of the trailer near the top. Dr. Barnwell was of the opinion the defects would reappear and the trailer would continue to deteriorate.
Mr. Davis, defendant's well-qualified expert, agreed that any square cornered opening weakens a structure and causes stress concentration at the point of the opening. A window structurally weakens a building. However, this does not mean the design is defective or that the structure is not sufficient to meet the use for which it is intended. He was of the opinion the trailer was adequately designed and structurally sound, primarily on the basis that structural defects had not manifested themselves in other Winnebago trailers of the same model. Dr. Barnwell also agreed that if his theory was correct it would be expected that similar problems would occur in other 223 trailers.
According to the testimony of defendant's witnesses and records of its repair shop, the manufacturer had no record of similar experiences with the several hundred other trailers of the same model which had been sold.
Defendant's witnesses were of the opinion the described defects were either caused by the collision with the telephone booth in Laredo or were normal minor problems resulting from the manufacturing process. The evidence is that the incident with the telephone booth involved only a slight impact which would not likely have caused damage to the trailer other than the area of the trailer that actually came into contact with the booth. However, defendant's other explanations of the causes of most of the problems make sense. For example, the wrinkles near the top of the trailer were caused by the way in which the sides are attached to the roof. The problem with the TV shelf was caused by a screw being left out. The cabinet over the sink was built that way. The door would not stay closed because the latch did not fit properly. The oil canning effect in spots is not unusual, particularly in the raised areas of the corrugated aluminum siding. The wardrobe problem and the cracks at the door might have resulted from a combination of the torsion effect and stress concentration at the door corners, but these problems by no means rendered the trailer unsuitable for its normal and intended use.
The evidence supporting plaintiff's contention that the trailer is structurally unsound due to faulty design and will continue to deteriorate is highly theoretical and speculative in nature. It is not borne out by serious physical manifestations which render the trailer unfit for its intended purpose. The defects shown are not such as to render the trailer's use so imperfect or inconvenient that the buyer would not have purchased it had he known of them.
Although plaintiff never authorized the repairs which were done at the Winnebago factory, the relatively minor defects were repaired by the manufacturer at its first opportunity to do so. That the defects were minor and were repaired at the first opportunity distinguishes the instant case from Reech v. Coco, 223 La. 346, 65 So.2d 790 (1953); and Cain v. Rapides Dodge, *213 Inc., 207 So.2d 918 (La.App. 3d Cir. 1968), cited by plaintiff.
The law relating to redhibitory actions and the plaintiff's burden of proof is set forth in our original opinion. Applying the law to the facts of this case, we hold plaintiff has failed to carry the burden of proof and that he is not entitled to rescission of the sale and return of the purchase price.
In any redhibitory action if the evidence establishes there is only a partial failure of consideration the court may award a reduction in the purchase price rather than rescission of the sale. Coco v. Mack Motor Truck Corp., 235 La. 1095, 106 So.2d 691 (1958); Papa v. Louisiana Metal Awning Company, 131 So.2d 114 (La.App. 2d Cir. 1961); LSA-Civil Code Article 2541.
However, to support such a responsive decree the plaintiff bears the burden of establishing not only the existence of the defects of which he complains, but also the amount of reduction to which he is entitled. Coco v. Mack Motor Truck Corp., supra; Ehrlich v. Roby Motors Co., 166 La. 557, 117 So. 590 (1928); Ingersoll v. Star Chrysler, Inc., 234 So.2d 85 (La.App. 4th Cir. 1970); Papa v. Louisiana Metal Awning Company, supra; Harding v. Ed Taussig Edsel Motors, Inc., 130 So.2d 517 (La.App. 3d Cir. 1961); Loeb v. Neilson, 128 So.2d 447 (La.App. 4th Cir. 1961); Lillis v. Anderson, 21 So.2d 389 (La.App. Orl.1945); Reimann Const. Co., Inc. v. Upton, 178 So. 528 (La.App.Orl.1938).
In the present suit plaintiff did not pray for such relief nor did he introduce any evidence on which any particular amount of reduction could be based. Thus, a reduction in the purchase price is not appropriate in this case.
Therefore, for the reasons assigned, our original decision is set aside and the judgment of the district court is affirmed at appellant's cost.
Affirmed.
AYRES, J., respectfully dissents and assigns written reasons.
AYRES, Judge (dissenting):
For the reasons assigned on the initial hearing of this cause I most respectfully dissent from the conclusions and decree reached by the majority on rehearing.
The majority now reasons, first, that the defects proved in the trailer involved are in themselves relatively minor and, second, that plaintiff failed to establish that the trailer is structurally unsound due to faulty design.
With respect to the first of the aforesaid conclusions, it is conceded that the evidence does show many minor defects. But the record also shows that after usual and customary use of the trailer on concrete or other hard-surfaced highways, the cabinets, fixtures, and appliances attached to the inside walls of the trailer tore loose and separated from the walls. These are, indeed, major, not minor, defects.
With reference to the second of the aforesaid conclusions, it may be pointed out that our original decree was based upon actually established defects in the trailer and not solely and merely upon a defective design. The record admits of no question as to the damages sustained, particularly to the interior, much of which, such as to the cabinets, fixtures, and appliances, as already noted, was separated from the walls from which these appurtenances were supposedly firmly attached.
Moreover, the interior portion or veneer of the three-ply walls became separated and detached from the remaining layers of the veneer wall construction, as did portions of the outside layer.
Irrespective of cause, improper design or otherwise, this is not such a trailer as one knowing of the defects would have bought. Nor is it such a trailer as would give the service for which it was purchased and which the purchaser would have a right to expect.
*214 Further, the sides of the trailer were purportedly constructed to serve as a truss to support the trailer. All experts so agreed. The door placed in the sidewall, extending from the floor to the roof, weakened the structure in that respect. Fractures in the wall at the upper door corners developed because of the lack of proper support. It is unthinkable and inconceivable that a four-by-five inch thin metal plate located at each of the upper corners of the door and fastened only with screws would be adequate to compensate for and offset the weakness of the structure caused by the opening.
Proof by the manufacturer that no other trailer of the same make, model, or design had developed defects such as developed to the trailer herein involved, is not proof of the lack of or freedom from defects in this particular trailer. Information as to other trailers not having developed such defects was wholly within the possession of the manufacturer, impossible or impracticable for plaintiff to rebut. Such evidence is of the weakest character.
It is common knowledge that many of the best designed motor vehicles are imperfect and defective on account of defects in their manufacture. It is likewise common knowledge that during the past several years practically all car manufacturers have recalled thousands of cars because of defects.
The manufacturer in the instant case apparently recognized and acknowledged the defects in the trailer. It claims to have repaired them. Again, it must be remembered that plaintiff bought this trailer under the impression and representation that it was properly constructed. It was never contemplated that he would be compelled to put up with a repaired, defective vehicle. Moreover, there is no convincing proof that the repairs to the trailer were adequate or substantial.
There is no assurance that the trailer will not again incur similar damage under and from normal use. It is obvious that the untrained eye of a layman could not see beyond the paint or other finishing touches applied either inside or outside the trailer and ascertain whether or not the repairs were substantial. It is not shown nor claimed that the trial judge was an expert when he made an inspection or observation of the repairs and pronounced them good. This opinion added nothing to the inadequate proof. Such an opinion is neither better nor worse than that of the average layman and, as such, is incompetent and inadmissible evidence.
The condition of this trailer, either before or after the repairs, as already noted, could not be determined on a basis that all other trailers of the same make, model, and design were excellent, no more than such a determination could be reached with respect to automobiles which, as stated, have been recalled in great numbers by the manufacturers.
To this unfortunate plaintiff, the facts in this cause present a real situation in which, in my studied opinion, he should be granted relief by a rescission of the sale of the trailer and the return of the purchase price. As a matter of law, plaintiff is not charged with a burden of establishing his claims to the degree of an absolute cinch. His burden extends only to the establishment of his claims by a reasonable preponderance of evidence; and I submit respectfully that he has satisfactorily met this burden.