480 So.2d 913 (1985)
Ronald D. SANDERS and LaVerne Stephens d/b/a S & S Logging Company, Plaintiffs-Appellants,
v.
SANDERS TRACTOR COMPANY, INC., Defendant-Appellee.
No. 17410-CA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1985.
*914 Whitehead Law Offices by C.R. Whitehead, Jr., Natchitoches, for Ronald D. Sanders and LaVerne Stephens, d/b/a S & S Logging Co., plaintiffs-appellants.
*915 Charles B. Bice, Winnfield, for Sanders Tractor Co., Inc., defendant-appellee.
Before MARVIN, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Plaintiffs, Ronald D. Sanders and LaVerne Stephens, d/b/a S & S Logging Company, appeal the trial court's rejection of their demands in quanti minoris against Sanders Tractor Company, Inc. We reverse.
The facts pertinent to this litigation may be briefly stated. On January 20, 1984, plaintiffs purchased a used Crown log loader with a Detroit power unit from Garland Sanders, the apparent sole stockholder of Sanders Tractor Company, Inc. The parties negotiated for approximately a week prior to the sale and finally agreed upon a price of $8,000, reduced from the original asking price of $12,000.
The machine in question apparently has two major subparts, one being the engine or power unit, and the other being the loading apparatus itself. We gather that the latter consists principally of a large hydraulic cylinder which operates a grasping mechanism. The cylinder is operated by a hydraulic pump which receives its power from the engine located on the power unit of the machine.
When the plaintiffs examined the equipment at defendant's place of business prior to the sale, they noticed that the main cylinder was leaking. This cylinder was repaired by plaintiffs shortly after purchase at Ronald Sanders' home with parts purchased elsewhere. In addition to this defect which was apparent to the purchasers at the time of the sale, it was discovered after delivery that the engine contained in the power unit had a cracked block.
Although the loading machine was assigned as collateral on a debt to another creditor and subsequently repossessed, plaintiffs instituted this action seeking a reduction in the sales price as a result of the repairs necessary to make the loader serviceable. However, plaintiffs were admittedly aware of the leaking cylinder at the time of purchase and conceded that no recovery was available for these repairs. See LSA-C.C. Art. 2521.
In oral reasons for judgment, the trial court held that the logging machine was sold "as is" and rejected plaintiffs' demands. In this ensuing appeal, plaintiffs contend that the fact that the used item was sold "as is" did not relieve defendant of all warranties, but only put the buyer on notice as to the qualification of the implied warranty.
In Louisiana, the seller is bound by an implied warranty that the thing sold is free of hidden defects and is reasonably fit for the product's intended use. LSA-C.C. Arts. 2475, 2476, 2520; Hob's Refrigeration & Air Conditioning, Inc. v. Poche, 304 So.2d 326 (La.1974); Rey v. Cuccia, 298 So.2d 840 (La.1974). When a defect or vice renders the thing sold either absolutely useless or makes its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice, the buyer may demand reduction of the price. LSA-C.C. Arts. 2520, 2541; Fraser v. Ameling, 277 So.2d 633 (La.1973). The decision to grant a reduction in price is based on a factual determination that the defect does not render the thing sold useless or totally unsuited to its purpose. Davis v. Davis, 353 So.2d 1060 (La.App. 2d Cir.1977), writ denied, 355 So.2d 549 (La. 1978); Ark-La-Tex Builders & Realty v. Hoge, 344 So.2d 90 (La.App. 2d Cir.1977).
Although the warranty against redhibitory defects in sales of used equipment is not as extensive as in sales of new equipment, it does require that the equipment operate reasonably well for a reasonable period of time. Hob's Refrigeration & Air Conditioning, Inc. v. Poche, supra; Red Arrow Sales, Inc. v. Dixie Motors, Inc., 442 So.2d 570 (La.App. 1st Cir.1983); Gisclair v. Cajun Trucking, Inc., 421 So.2d 339 (La.App. 1st Cir.1982); Bamber Contractors, Inc. v. Henderson Brothers, Inc., 392 So.2d 92 (La.App. 1st Cir.1980).
*916 A sale made "as is" is not a waiver of all warranties. The vendor is not relieved of the implied warranty under LSA-C.C. Art. 2520 that the thing must be fit for the use for which it is intended. The "as is" stipulation, especially in a sale of a used thing, means that the thing is not warranted to be in perfect condition and free of all defects which prior usage and age may cause. Juneau v. Bob McKinnon Chevrolet Company, 260 So.2d 919 (La. App. 4th Cir.1972); Maddox v. Katz, 8 So.2d 749 (La.App.Orl.Cir.1942).
The parties are free to limit or diminish, by express agreement, the warranty imposed by law. Slack v. Inglehart, 386 So.2d 967 (La.App. 3d Cir.1980); see also LSA-C.C. Art. 2503. The seller can limit this warranty by declaring to the buyer the hidden defects at the time of the sale, Article 2522, or can otherwise limit his obligations as seller, providing he do so clearly and unambiguously, LSA-C.C. Art. 2474. Rey v. Cuccia, supra.
In Hendricks v. Horseless Carriage, Inc., 332 So.2d 892 (La.App. 2d Cir. 1976), this court, in construing the provisions of C.C. Art. 2474, held that three elements must exist before a waiver is held to be effective: (1) the waiver must be written in clear and unambiguous terms; (2) the waiver must be contained in the sale and chattel mortgage document; and (3) the waiver must either be brought to the attention of the buyer or explained to him. See also Edwards v. Port AMC Jeep, Inc., 337 So.2d 276 (La.App. 2d Cir. 1976), writ denied, 339 So.2d 854 (La.1976).
In the instant case, the Hendricks criteria were not met as plaintiff did not execute a written waiver of the implied warranty. Consequently, the implied warranty of fitness was not waived.
However, latent defects which have been declared by the seller to the buyer before or at the time of the sale may not form the basis of a redhibitory action. LSA-C.C. Art. 2522. This article specifically provides:
Art. 2522. Latent defects made known to buyer.
Art. 2522. The buyer can not institute the redhibitory action, on account of the latent defects which the seller has declared to him before or at the time of the sale. Testimonial proof of this declaration may be received.
Thus, the issue presented by this appeal is whether, within the context of these facts, the cracked block was either an apparent defect or was declared by the defendant-seller to the plaintiffs as a latent defect existing in the machine at the time of sale.
Ronald Sanders testified that the loader was sold "as is" but that he was under the impression that he could "put it on the truck and go to the woods and go to work with it." On cross-examination, after conceding that he was aware of the cylinder leak at the time of purchase and that he knew he was getting a piece of used equipment "on the shop floor just like [he] saw it with no guarantee," he insisted that he thought he would be able to take the machine to the woods and use it for the purpose it was intended.
Garland Sanders testified that he told the buyers that "they bought the loader just like it was, sitting where it was, as is, with no warranty whatsoever." Garland Sanders testified that he told them that he did not even know if it would start and that he did not know much about the equipment because it was a repossession. The seller stated that he told Sanders and Stephens that he would not repair the machine in any way. According to his testimony, the purchasers knew that they were buying a piece of equipment without a warranty. Sanders stated that he told them that "I'm selling you the loader and I'm giving you the engine."
Lonnie Ray Brown, who was employed at Sanders Tractor, heard Garland Sanders tell Ronald Sanders and Stephens that there was no guarantee attached to the piece of equipment. Lonnie Ray Brown helped Sanders and Stephens start the equipment on the lot and heard the buyers *917 say that the engine "ought to last a while." Glen Stewart, the parts salesman for Sanders Tractor, was instructed by Garland Sanders that if Sanders and Stephens needed any parts, they would have to pay because the machine was sold "as is."
In the instant case, the latent defect extant in the logloader was a cracked engine block. This defect manifested itself within three days of purchase, giving rise to the codal presumption that the defect existed prior to the sale. LSA-C.C. Art. 2530. Although the seller's testimony indicates that he was quite candid with the buyers about the defects of which he was aware, the cracked block was unknown to the sellers and clearly not declared to the buyers prior to or at the time of their purchase. Thus, while the sale was understood by both parties to be "as is," because of the cracked block the machine could not perform the purpose for which it was intended  the loading of logs in the course of a woodcutting operation.
Therefore, the plaintiffs are entitled to relief under the theory of redhibition. This undeclared latent defect caused the entire apparatus to be unfit for the use for which it was intended. For this reason, the "as is" stipulation is insufficient to insulate the seller from the protection redhibition affords to the buyer. LSA-C.C. Arts. 2520, 2522. Juneau v. Bob McKinnon Chevrolet Company, supra; Maddox v. Katz, supra.
The instant case bears a certain similarity to Buck v. Adams, 446 So.2d 895 (La. App. 1st Cir.1984). There the court determined that a buyer was entitled to recision of the sale of a boat even though the seller informed the buyer that the vessel had wormholes. Subsequent to the sale, the vessel was determined to be unseaworthy as a result of the wormholes. Apparently, the damage caused by the wormholes was more extensive than either party was aware because the record revealed that it was possible to have a seaworthy vehicle in spite of wormholes. The court allowed redhibitory recovery in spite of the declaration because the vessel's actual unseaworthiness caused it to be unsuited for the purpose intended.
Having determined that plaintiffs are entitled to redhibitory relief in the form of reduction of the purchase price, it becomes our task to ascertain that sum. In so doing, we note that the fact that the machine is no longer in the purchaser's possession and may not be returned in order to restore the status quo will not prevent an action in quanti minoris. See Cloud v. Huffman Motor Company, Inc., 416 So.2d 266 (La.App. 3d Cir.1982); Lacey v. Baywood Truck and Machinery, 381 So.2d 863 (La.App. 1st Cir.1980), affirmed as Capital Bank & Trust Company v. Lacey, 393 So.2d 668 (La.1980).
There must be evidence in the record to support a reduction in price. R.O. Roy & Company, Inc. v. A & W Trailer Sales, 277 So.2d 204 (La.App. 2d Cir.1972). This evidence may consist of expert opinion testimony. Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La. App. 4th Cir.1974), writ denied, 303 So.2d 186 (La.1974). The burden of establishing the amount of any reduction in the purchase price to which a buyer is entitled because of a redhibitory vice is upon the buyer. Johnson v. H.W. Parson Motors, Inc., 231 So.2d 73 (La.App. 1st Cir.1970).
A party may prove the amount of damages or expenses to which he is entitled by testimony that he has paid the amounts, corroborated by introduction into evidence of the bills paid and identification of them as expenses incurred because of the opponent's default, without necessarily being required to introduce testimony of those who perform the work or repairs for which he paid. Trinity Universal Insurance Company v. Normand, 220 So.2d 583 (La.App. 3d Cir.1969), and the citations contained therein. Such receipts so identified may be accepted as sufficiently proving the claim in the absence of contradictory evidence or other reason casting suspicion upon the amounts so proven. Trinity, supra. Where there is no proof of actual damages, the allowance should be for a *918 nominal amount only. Hyorth v. Louisiana Department of Corrections, 460 So.2d 22 (La.App. 1st Cir.1984); Fiesta Foods, Inc. v. Ogden, 159 So.2d 577 (La.App. 1st Cir.1963), writ denied, 245 La. 956, 957, 162 So.2d 10, 11 (1964).
In the instant case, plaintiff-appellants have introduced evidence of certain invoices for parts and labor which they contend support their claim for cost of repairs. We note that plaintiffs originally sued for some $3,800.00 and that the invoices introduced in evidence total some $3,400.00. From the testimony of plaintiff Ronald Sanders we gather that the amount sued for was the total amount of invoices for all repairs on the machine in question. Prior to trial, certain of those invoices were determined not to pertain to the engine or power difficulties of the machine and were not introduced. Also, plaintiffs candidly conceded that several hundred dollars worth of invoices introduced at the trial also did not pertain to the repair of the engine portion of the machine and should be disregarded.
In addition, in our examination of the other invoices, we note charges for items such as filters and spark plugs. These are obviously items pertaining to routine maintenance. Likewise, there are any number of other items such as couplings, sleeves, valves and bolts about which there is no explanation, since the party performing the repairs did not testify. Also, on one invoice several parts are listed by part number only and are not described. Thus, we have no evidence to indicate why all of these part items were required for this engine in the process of the replacement of the cracked block. Perhaps using new parts was cheaper than tearing down the old engine. Perhaps not. That information is simply not contained in the record. However, in evaluating the repair invoices we note that most of the part items are fairly nominal in price. Most items were under $10 and only a few were over $50. The total price cost of parts was just under $1,900 and the price of the new block was approximately $1,035. The total labor charge was $930. However, the invoice only lists this total labor charge and does not indicate how much time or labor was assessed to any particular function.
Of course, one of the principal factors in making an award in quanti minoris is the cost of repairing the defects, which under certain circumstances may be the only consideration. However, where warranted, the court may determine what it believes to be the difference between the actual sales price and the price that a reasonable buyer and seller would have agreed upon had the specific defect been known to them at the time of the sale. Robertson v. Coleman Oldsmobile, Inc., 451 So.2d 1323 (La.App. 1st Cir.1984); Cloud v. Huffman Motor Company, Inc., supra; Menville v. Stephens Chevrolet, Inc., supra.
Considering the fact that the machinery here at issue was obviously not suitable for the use intended and the difficulty in specifically ascertaining the cost of repairing this defective block because of the nature of the record in that regard, we have determined that the price should be reduced in the amount of $2,250, which represents our assessment, on the basis of the proof presented, of the cost of repairing the engine block.
Accordingly, the judgment of the trial court is reversed and there will be judgment in plaintiffs' favor in that amount.

Decree
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiffs, Ronald D. Sanders and LaVerne Stephens, against the defendant, Sanders Tractor Company, Inc., in the amount of $2,250, together with legal interest thereon from the date of judicial demand until paid. All costs of this suit are assessed against defendant.
REVERSED AND RENDERED.