618 So.2d 1229 (1993)
Floyd A. RODDY and Dawn Roddy, Plaintiffs-Appellants,
v.
James W. CRAWFORD, Defendant-Appellee.
No. 92-917.
Court of Appeal of Louisiana, Third Circuit.
May 19, 1993.
*1231 Walter Marshall Sanchez, Lake Charles, for Floyd A. Roddy and Dawn Roddy.
Thomas M. Bergstedt, Lake Charles, for James W. Crawford.
Before LaBORDE, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
Plaintiffs, Floyd and Dawn Roddy, appeal a jury verdict in favor of defendant, James Crawford, which denied their claim for a reduction in the purchase price of a residence sold to them by Crawford. They also appeal an award of $10,000.00 against them on a reconventional/third party demand filed by Crawford.

*1232 ISSUES
The Roddys' assignments of error pose two issues for our resolution: (1) whether the jury verdict was clearly wrong in denying a reduction in price and awarding damages to Crawford; and, (2) whether the judgment against Dawn Roddy was legally permissible since she was not named as a party in Crawford's third party demand or the jury verdict sheet.
For the following reasons, we affirm the judgment of the lower court.

FACTS
Crawford and his former wife built an impressive two-story, 5200 square foot living area, water front home in Lake Charles. Crawford decided to sell the house after obtaining sole ownership of it through a community property partition agreement.
The house and adjoining lot appraised for $468,550.00 in January, 1988. After several rounds of negotiation, Crawford agreed to sell the property for $365,000.00 in an "as is" condition to Roddy, an attorney who specialized in real estate law.
The agreement to purchase and sell was drawn up by Bryan Taylor of Briken & Associates, a real estate company, in October, 1989. On a separate sheet of paper, he added the "as is" provision which reads in pertinent part:
"Purchaser accepts property as is including yard lights that do not work. Owner is not aware of any other problem."
The Roddys and Crawford signed the purchase and sell agreement and the "as is" provision on the separate sheet.
Roddy prepared the cash sale deed but failed to include the "as is" language. Upon closing, Crawford requested that the closing papers be sent to his attorney for review prior to his signing. Roddy mailed the cash sale deed to Crawford's attorney without the purchase and sell agreement. Crawford's attorney had no way of knowing that the "as is" provision was to be included in the cash sale deed and he consequently informed Crawford that the cash sale deed was correctly drafted. The deed was signed on November 15, 1989.
Shortly after taking possession of the house, the Roddys began to discover some problems with the home that were not brought to their attention before the sale. The first problem occurred with the heat exchangers in three of the four furnaces. Because the damaged heat exchangers caused the furnaces to emit carbon monoxide, the Roddys had to replace the three furnaces.
The next problem was the discoloration of the large, double insulated picture windows used for energy efficiency. These windows were still under a manufacturer's warranty. However, when the workmen removed them from the base, they showed Roddy a water damaged, rotted window sill. This window sill had to be repaired before new windows could be installed since the sill would not be strong enough to withstand the weight of the windows.
Roddy also discovered that the second floor deck and/or balcony was "sistered." That is, the beam upon which the deck rests had new wood nailed to old wood to support it due to the rot of the beam. There was also evidence of new planking to the deck which had not been disclosed to the Roddys.
The Roddys filed a lawsuit against Crawford seeking a reduction in price on May 10, 1990. Crawford died on August 11, 1992, and his three sons, John W. Crawford, James W. Crawford, Jr. and Samuel F. Crawford, legal successors of Crawford, Sr., were substituted for the deceased party on October 14, 1992.

LAW AND DISCUSSION

A. Liability
The Roddys contend the jury erred in finding that they were not entitled to a reduction in purchase price due to latent defects in the house at the time of sale. Crawford contends that even if there were latent defects, the Roddys waived any action they may have had to a reduction in price because of the "as is" provision of the *1233 purchase and sell agreement and the cash sale deed.
The Roddys have limited their demand to a reduction of the price of the house. This action is subject to the same rules and to the same limitations as a redhibitory action. LSA-C.C. art. 2544.
A seller impliedly warrants to the buyer that the object sold is free of redhibitory defects and is reasonably fit for its intended purposes. LSA-C.C. art. 2476. The parties are free to limit or diminish, by express agreement, the warranty imposed by law. Hence, a purchaser may waive these warranties. Crawford can limit his obligations as seller if he does so clearly and unambiguously. Rey v. Cuccia, 298 So.2d 840 (La.1974). It is the seller's burden to prove that the purchaser has waived the warranties. Monk v. Oakdale Motors, Inc., 544 So.2d 98, 100 (La.App.3d Cir. 1989). In Monk, we recently stated the requirements for a valid waiver of warranty:
"For a waiver to be effective, it must: (1) be written in clear and unambiguous terms; (2) be contained in the sale and... mortgage document; and (3) either be brought to the attention of the buyer or explained to him."
Id. at 100.
Crawford argues that the house was sold "as is." However, a sale made "as is" is not a waiver of all warranties. The vendor is not relieved of the implied warranty under LSA-C.C. art. 2520 that the thing must be fit for the use for which it is intended. The "as is" stipulation, especially in the sale of a used thing, means that the thing is not warranted to be in perfect condition and free of all defects which prior usage and age may cause. Sanders v. Sanders Tractor Co., Inc., 480 So.2d 913 (La.App.2d Cir.1985). However, the Roddys could have waived all warranties as to latent defects in the house if the "as is" clause sufficiently made clear to the Roddys that Crawford was selling the house without implied warranties.
In the case sub judice, the dispute centers on the first requirement of an effective waiver of warranty, that is, whether the waiver was written in clear and unambiguous terms which brought to the attention of the Roddys that Crawford was selling his house without warranty, implied or otherwise. It appears from the jury's verdict that after its consideration of all the testimony and evidence adduced at trial, it concluded that either (1) the Roddys waived the implied warranty; or, (2) that the problems in the house were not latent defects entitling the Roddys to a reduction in price; or, (3) that Crawford did not conceal any defects which, pursuant to LSA-C.C. art. 2548,[1] would cause any renunciation of warranty by the Roddys to be nonobligatory.
The determinative issues on appeal concern the factual findings of the jury. The jurisprudence in this area is well settled. The appellate courts of Louisiana have full and complete jurisdiction to review facts. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The standard for review of facts was enunciated in Canter v. Koehring Co., 283 So.2d 716 (La.1973) where the Louisiana Supreme Court stated:
"... the reviewing court must give great weight to the factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable ..."
Canter, supra at 724.
It is well recognized that the jury's determination of credibility of witnesses is entitled to great weight and should not be disturbed on appellate review unless manifestly erroneous. A finding based on the jury's decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous *1234 or clearly wrong. Rosell v. Esco, 549 So.2d 840 (La.1989).
At this juncture, we will address the issue as to the waiver of warranty and the "as is" provision in the cash sale deed and the purchase and sell agreement. The "as is" provision states that the Roddys would purchase the house "as is." Further, the "as is" clause stated that the yard lights did not work and that Crawford was unaware of any other problem with the property.
In brief, the Roddys cite several cases where "as is" provisions, similar in content to the provision in this case, were held to be insufficient to insulate the seller from the protection redhibition or quanti minoris affords the buyer. Sanders, supra, 480 So.2d at 917. Crawford contends that he sold the house to the Roddys at a reduced price upon condition that they accept the house "as is." In Harvell v. Michelli, 500 So.2d 871 (La.App. 1st Cir.1986), a similar condition was placed upon the sale of a car at a reduced price; yet, the waiver of warranty language was held to be insufficient to waive the warranties implied by law. The court in Harvell found the language of the "as is" clause to be "cryptic" because it failed to clearly state the purchaser waived both express and implied warranties.
Those cases are not dispositive on the issue involved in this case because, unlike the buyers in Sanders and Harvell, Roddy is a highly experienced real estate attorney. Language in an "as is" clause that is ambiguous and unclear to the ordinary citizen involved in a real estate transaction would not be ambiguous or unclear to a sophisticated real estate attorney who has written many deeds involving waivers of warranties. A more detailed "as is" provision was not necessary in Roddy's case. Even "as is" provisions written in more detail have been held to be ambiguous because of the difficulty with which the average person would have in understanding its terms if not properly explained. See Cregar v. Robertson, 542 So.2d 1090 (La. App.2d Cir.1989).
In drafting deeds for other clients, Roddy understood what his clients wanted when they requested the sale of real estate be "as is." Moreover, the purchase and sell agreement, which had attached to it the "as is" provision, was prepared by Briken & Associates, the agent of the Roddys. Roddy prepared the cash sale deed and admitted that he failed to add the "as is" clause to that deed and only added the provision when Crawford demanded its inclusion in his reconventional demand filed against the Roddys. Roddy also admitted that his sworn affidavit, filed in support of his motion for summary judgment, was incorrect in stating that he
"negotiated ... for the transfer of the... property, through Mr. Crawford's attorney, Thomas Bergstedt; that Thomas Bergstedt was provided with copies of all documents involved in the transfer of this property prior to signing by either party, including a copy of the purchase and sale agreement ..."
There were no negotiations with Crawford's attorney pertaining to the transfer of the property nor did Roddy provide all documents involved in the transfer, most importantly the "as is" provision attached to the purchase and sell agreement.
Even if the jury found that the "as is" provision was unclear or ambiguous and, therefore, the implied warranties were not waived by the Roddys, the clause would have to be construed against the Roddys. See LSA-C.C. art. 2056. Roddy (who offered his legal services to Crawford) was responsible for drafting the cash sale deed. Also, the purchase and sell agreement was on the form provided by Roddy's agent. In addition, if any ambiguity in the clause existed, the jury was allowed to determine the intent of Crawford and Roddy when they entered into the purchase and sell agreement, an issue of fact which the jury can infer from the surrounding circumstances. Kuswa and Associates, Inc. v. Thibaut Construction Co., 463 So.2d 1264 (La.1985).
Crawford waited one month before accepting the Roddys' final offer of $365,000.00. However, Crawford conditioned his acceptance upon the Roddys taking the house "as is." Since it is established by *1235 jurisprudence that the proper amount of a reduction in price is the difference between the actual sales price and the price a reasonable buyer and seller would agree upon knowing of the defects, it is quite possible that the jury determined that Crawford and the Roddys, in negotiating a selling price some $100,000.00 below its appraised value and $15,000.00 less than the prior offer, had already taken into account the defects. See Cregar, supra 542 So.2d at 1097 and Millspaw v. Knight, 430 So.2d 1207 (La. App. 1st Cir.1983).
The jury considered the waiver issue, including the conflicting testimony in reference to whether the waiver was clear and unambiguous and, obviously, resolved the issue in favor of Crawford. The jury had the opportunity to observe the witnesses and assess their demeanor and credibility. The factual findings of the jury in reference to whether the "as is" was clear and unambiguous to the Roddys or whether the Roddys and Crawford intended that the house be sold without warranty implied or otherwise should not be reversed unless clearly erroneous. Arceneaux, supra 365 So.2d 1330. After reviewing the record, we find no manifest error in this conclusion.
The Roddys argue that regardless of whether or not they waived the implied warranty, they are still entitled to a reduction in price because Crawford willfully concealed the fact that the deck possessed a continuing problem of wood rot. As stated earlier, LSA-C.C. art. 2548 renders a renunciation of warranty by the buyer nonobligatory, where there has been fraud on the part of the seller.
During trial, Crawford admitted to repairing the second floor deck sometime in 1983 or 1984. The Roddys assert that there was a second attempt to patch the continuing wood rot problem in the second floor deck of the home immediately prior to their purchase which was not disclosed by Crawford. To support their assertion, the Roddys introduced the testimony of Victor Assunto, the owner of a pressure cleaning service who cleaned the Crawford house. Assunto's rebuttal testimony revealed that he washed the house a few times while it was owned by Crawford. He further testified that when he first washed the house, the second floor deck was fine; however, when he next washed the house, it seemed weak. Assunto continued his testimony indicating the last time that he cleaned the Crawford house, the floor of the deck had been repaired.
Crawford denied repairing the second floor deck a second time in the late 1980's, just prior to closing the sale of the house to the Roddys. The testimony of Elton Menard, a former employee of Crawford, revealed that he repaired the balcony for Crawford. When asked about "sistering" the balcony, Menard denied using that process and insisted that his repair of the deck removed all of the damaged wood.
There was no documentation or bill showing that there had been a second repair of the deck. Assunto, although clear as to the problems in the deck and its subsequent repair, was unclear as to the number of times he pressure cleaned the house. Moreover, Assunto could not seem to remember what years he cleaned the house nor the last year that he cleaned the house. Thus, the jury could have found that his last wash job was in 1987 or 1988, well before Crawford sold the house to the Roddys.
Where the jury based its findings on a decision to credit the testimony of one of two or more witnesses, their findings can virtually never be manifestly erroneous or clearly wrong. See Rosell, supra 549 So.2d at 845. It is clear that the jury chose to believe Crawford and Menard on the deck repair issue, as opposed to Assunto. We cannot say that the jury's findings were clearly wrong.

B. Damages
The jury awarded $10,000.00 to Crawford against both Mr. and Mrs. Roddy on Crawford's reconventional demand. The Roddys argue that Crawford's reconventional demand against the Roddys sought only the inclusion of the "as is" clause from the purchase and sell agreement in the cash sale deed and did not request damages. The "as is" clause was *1236 added prior to trial in a summary judgment proceeding. The Roddys claim that the jury's verdict is based on Crawford's third party demand, which was dismissed as to all parties except Roddy for failing to include the requested language in the cash sale deed. Thus, the first issue is whether Crawford should have been awarded damages on his reconventional demand where that demand merely requested a contract reformation rather than damages.
We agree with the Roddys that Crawford's reconventional demand merely requested a contract reformation. However, Crawford's "third party demand" against Roddy, individually, did request damages for breach of the obligation to prepare the sale documents in conformity with the agreement between he and the Roddys.
A reconventional demand is when the defendant in the principal action asserts any causes of action he may have against the plaintiff in the principal action, regardless of the connexity between the principal and reconventional demand. The reconventional demand is compulsory where the defendant's cause of action which he may have against the plaintiff arises out of the transaction or occurrence that is the subject matter of the principal demand. LSA-C.C.P. art. 1061. The Code of Civil Procedure does not favor harsh technical rules of pleading but rather requires the pleadings be construed so as to do substantial justice. Bailey v. Cajun Insulation, 453 So.2d 237 (La.1984); Kuebler v. Martin, 578 So.2d 113 (La.1991); Sevarg Co., Inc. v. Energy Drilling Co., 591 So.2d 1278 (La.App. 3d Cir.1991), writ denied, 595 So.2d 662 (La.1992). The nature of a pleading must be determined by its substance, not its caption. Bonaventure v. Pourciau, 577 So.2d 742 (La.App. 1st Cir.1991). The official comments to LSA-C.C.P. art. 865 as to the construction of pleadings, state that Article 865 of the Code of Civil Procedure is to serve as a reminder to judges that a pleading is not an end in itself, but merely a means to an end.
Crawford brought a third party demand against Roddy, the plaintiff in the main demand, for damages due to the harassment, anxiety and annoyance of having to defend the suit and prosecute the reconventional demand as well as expenses, costs and attorney's fees. Thus, Crawford's prayer for such damages, arising out of the sale of his property to the Roddys, against Roddy, individually, is in actuality a reconventional demand which the trial court had a duty to recognize as the true nature of the pleading. Louisiana Livestock Sanitary Board v. Johnson, 372 So.2d 585 (La.App. 3d Cir.1979), writ denied, 373 So.2d 967 (La.1979). Where miscaptioning of a pleading does not prejudice the other party, courts may overlook the miscaptioning. Higdon v. Higdon, 385 So.2d 396 (La.App. 1st Cir.1980). In the present case, it is clear that Roddy was not prejudiced by the improper labeling of Crawford's demand for damages.
The next issue is whether the evidence in the record supported the jury's award of $10,000.00 in damages to Crawford. The Roddys argue that Crawford's only evidence of damage at trial consisted of his attorney's fees associated with the litigation and that, absent a showing of specific statutory or contractual agreement of the parties as to payment of attorney's fees, the jury's award was clearly wrong. Crawford asserts that he is entitled to damages because Roddy breached their contract when he offered to perform the legal services in connection with the sale of the house. Crawford further asserts that the offer of legal services by Roddy was an inducement to sell the house and he was bound to perform in good faith and in conformity with their intentions. The trial judge, on Roddy's motion for a new trial, found that enough evidence existed to show some damages to Crawford.
LSA-C.C. art. 1983 provides that contracts are to be performed in good faith. An obligor who performs a contract in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform. LSA-C.C. art. 1997. The Official Comments to C.C. art. 1997 in (b) further provides: "An obligor is in bad faith if he intentionally and maliciously *1237 fails to perform his obligation." The ultimate determination with regard to the existence or nonexistence of an obligation and/or contract as well as bad faith are questions of fact for the jury which should not be disturbed in the absence of clear or manifest error. See Canter, supra 283 So.2d at 724; Arceneaux, supra 365 So.2d at 1333.
After reviewing the record, we cannot say that the jury erred in determining that Roddy failed to perform an obligation owed to Crawford in good faith. Because the record contains evidence that Crawford suffered damages other than attorney's fees and, absent a request by the Roddys for special interrogatories designating the apportionment of a damage award, we cannot say that the award was pure speculation. This assignment of error is without merit.
The Roddys contend that Mrs. Roddy should not be cast in judgment for the $10,000.00 damage amount awarded to Crawford by the jury because she was not named as a defendant on the verdict sheet.
The trial court has power to mold or amend a verdict to make it conform with the intention of the jury, and the best principle is that the amendment should or should not be permitted as would best tend to further the ends of justice. Hardie v. Allen, 50 So.2d 74, (La.App.Orl.1951). In Batiste v. Joyce's Supermarket, 488 So.2d 1318 (La.App. 3d Cir.1986), this court held that failure to include an insurer defendant on the verdict sheet was at best a harmless error. Considering the definition of a reconventional demand, it is clear that Crawford sought damages from both Roddys, plaintiffs in the main demand, although it was the acts of Mr. Roddy which caused Crawford to ultimately suffer damages. Our review of the record reveal no basis to presume that the omission of Mrs. Roddy's name from the verdict sheet was anything more than an oversight.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs-appellants.
AFFIRMED.
LaBORDE, J., concurs in the result.
SAUNDERS, J., concurs in part and dissents in part and assigns reasons.
SAUNDERS, Judge, dissenting in part; concurring in part.
I respectfully dissent as to the issue of damages. I disagree with the jury's finding that Crawford, plaintiff-in-reconvention, had proven damages in the amount of $10,000.00.
The reconventional demand appears to be a cross between an action to reform the deed, necessitated by legal malpractice or breach of contract, due to Roddy's promise to supply complimentary legal services in connection with the sale of the house, and an action for breach of contract or detrimental reliance, due to Crawford's need to defend this suit for reduction in the sale price. The main fact giving rise to Crawford's allegations appears to be that Roddy did not put an "as is" clause in the cash sale deed, although it was contained in the purchase and sell agreement. The claim for detrimental reliance appears to arise from the fact that Crawford believed that when Roddy promised to do complimentary legal work, he promised to express Crawford's wishes in the deed. As a result of this promise, Crawford did not hire a real estate expert to represent his interest and ascertain whether the "as is" clause was contained in the deed.
I find that the jury erred, as a matter of law, in determining that any damages suffered by Crawford were due to Roddy's failure to insert the "as is" clause in the cash sale deed. Although it does appear that the omission of this clause was the basis of the reconventional demand against Roddy, it does not appear to be the basis of the claim for damages against Roddy. In other words, there was no evidence that the Roddys would not have sued Crawford for a reduction in the purchase price if the "as is" clause had been in the deed. This is shown to be true by the fact that the Roddys moved the trial court, by motion for summary judgment, to reform the deed and include the clause in the deed. Nevertheless, *1238 after reformation took place, the Roddys did not discontinue their lawsuit asking for a reduction of the purchase price. Obviously, the Crawfords would have had to defend the lawsuit against them even with the inclusion of the "as is" clause in the deed.
Crawford has not proven that, "but for" the omission of the "as is" clause, he would not have been sued for breach of an implied warranty, i.e., that the thing sold was free from hidden defects and was reasonably fit for its intended use. As such, Crawford has failed to prove the connexity between any damages he suffered and Roddy's legal services performed.
In order for a cause of action for breach of contract or an action for detrimental reliance to lie, the jury would have had to find that the Roddys had promised to forbear from filing any lawsuits as a result of their purchase of the Crawford home. Without the showing of a "promise not to sue," upon which Crawford detrimentally relied, he has no basis for an award of damages for breach of contract or detrimental reliance. Since no showing was made that the Roddys had promised to forbear from filing any lawsuits against Crawford as a result of the purchase of Crawford's residence, we must find error on the part of the jury in finding that such an agreement existed and was breached by the Roddys.
Generally, Louisiana does not recognize a cause of action for bringing a good faith but unsuccessful lawsuit, other than an action for malicious prosecution. We are not dealing with malicious prosecution in this case.
For the above reasons, I respectfully dissent as to the issue of damages. As to all other issues, I concur in the majority findings.
NOTES
[1] LSA-C.C. art. 2548 states:

The renunciation of warranty, made by the buyer, is not obligatory, where there has been fraud on the part of the seller.